# Richmond

## Abram P. Staples, Attorney General of Virginia v. Henry G. Gilmer, Comptroller of Virginia.

February 26, 1945.

Record No. 2946.

Present, All the Justices.

The opinion states the case.

*Abram P. Staples, Attorney General,* for the petitioner.

*Albert V. Bryan,* for the respondent.

PER CURIAM.

The constitutionality of an Act of the 1944 Extra Session of the General Assembly, known as Chapter 1, approved on December 16, 1944, has been challenged. This Act in general provides for submitting to the qualified electors the question whether there shall be a constitutional convention to make such revisions and amendments to the suffrage provisions of the Constitution of Virginia as are necessary to remove certain registration and poll tax requirements which are obstacles to voting by members of the armed forces.

On January 17, 1945, after hearing argument of counsel, and after full consideration of all questions raised, because of the importance of the matter and the public requirement that it be speedily determined, we entered an order holding that the Act in question was constitutional and directing that the mandamus prayed for be issued. At that time we announced that a full opinion, which necessarily required considerable time for its preparation, would be filed later.

The Act, in part, reads as follows:

"Whereas, by an Act designated as chapter two hundred eighty-seven of the Acts of nineteeen hundred forty-four, the General Assembly sought to enact measures to enable certain Virginia members of the armed forces in active service to vote in elections for State and local officers, which said Act has been adjudicated by the Supreme Court of Appeals to be void because in violation of certain provisions of the Constitution respecting registration and poll tax payments as voting qualifications; and,

"Whereas, in order to permit said members to vote in said election it is deemed necessary that said provisions of the Constitution be revised and amended in so far as they relate to said members of the armed forces; and,

"Whereas, it is impossible to procure such amendments and revisions within the time required to permit such members to vote in the nineteen hundred forty-five elections except by convening a constitutional convention; and,

"Whereas, because it is deemed unwise, in the absence of a great number of Virginia citizens in war service, to make

any sweeping or drastic changes in the fundamental laws of the State, in the making of which they are unable to participate, and also, in order to assure the adoption of the contemplated amendments and revisions within the time necessary to permit said members of the armed forces to vote in the primary and general elections of nineteen hundred forty-five, it is deemed necessary that the people eliminate all questions from consideration by said convention save and except those essential to the adoption of those revisions and amendments specified in this Act; and,

"Whereas, in order to avoid heated and untimely controversies throughout the State as to what other matters, if any, may or should be acted upon by said convention, it is believed to be in the public interest to submit to the electors the sole question whether a convention shall be called which will be empowered by the people to consider and act upon said limited revisions and amendments only, and not upon any others:

"Now, therefore, be it enacted by the General Assembly of Virginia as follows:

"1.   That at an election to be held on such day as may be fixed by proclamation of the Governor (but not later than ninety days after the passage of this Act) there shall be submitted to the electors qualified to vote for members of the General Assembly the question 'Shall there be a convention to revise the Constitution and amend the same?' Should a majority of the electors voting at said election vote for a convention, the legal effect of the same will be that the people will thereby delegate to it only the following powers of revision and amendment of the Constitution and no others.

"A.   The convention may consider and adopt amendments necessary to accomplish the following purposes, and no others.

"1.   To eliminate registration and payment of poll taxes by members of the armed forces while in active service in time of war as a prerequisite to the right of said members

to vote in any and all elections while in such service, but not to eliminate same with respect to any other persons.

"2. To cancel and annul all poll taxes heretofore assessed or assessable against members of the armed forces for every year during all or a part of which said members were in active service in time of war, and to exempt said members from future assessments of poll taxes for all years, during a part of which they are hereafter engaged in such active service in time of war.

"B. The convention shall be empowered to proclaim and ordain said revisions and amendments adopted by it within the scope of its powers as above set forth without submitting same to the electors for approval, but the convention will not have the power to either consider, adopt or propose any other amendments or revisions."

Then follows provision for holding the election, for the ballots to be printed by the Secretary of the Commonwealth, and for the expenses incurred in conducting the election. An appropriation of $25,000 is made, to cover necessary expenses, to be paid by warrants drawn by the Comptroller on the Treasurer, pursuant to vouchers or invoices approved by the Secretary of the Commonwealth. The Act is an emergency one.

In the Act provision is made for an "Informatory Statement" to be printed on the ballot. It, in substance, is a part of the Act above quoted, and concludes, "In the light of the foregoing information, the question to be voted on is as follows: Shall there be a convention to revise the Constitution and amend the same?" The proposed ballot carries the usual designated squares in which the elector may register his vote either "for" or "against" the convention.

At the regular 1944 session of the General Assembly of Virginia, chapter 287 of the Acts of Assembly of 1944, page 414, known as sections 220 (27)-220(40), inclusive, of the 1944 Supplement to the Code of Virginia, was enacted to enable certain Virginia members of the armed forces of the United States to vote in elections for State and local officers without complying with the required poll tax and registra-

tion provisions of the Virginia Constitution. This Act was held to be unconstitutional by this court. *Staples* v. *Gilmer*, *ante*, p. 338, 32 S. E. (2d) 129. The challenged Act now under consideration is another effort made by the General Assembly to enable certain members of the armed forces of the United States to vote in the State and local elections without complying with the present poll tax and registration provisions of the Virginia Constitution.

Doubt having arisen in the mind of the Comptroller of Virginia respecting the constitutionality of this Act, and he having notified the Attorney General of Virginia that he would not make any payments pursuant thereto until there had been a final adjudication of its validity by the Supreme Court of Appeals, the Attorney General filed his petition for a writ of mandamus, in which he invokes the original jurisdiction of this court under chapter 289 of the Acts of Assembly of 1944, at page 425, also known as section 374c of the 1944 Supplement to the Code of Virginia (Michie), to determine the constitutionality of the Act.

It is contended by the respondent that the Act is in conflict with section 197 of the Constitution of Virginia, and therefore void. Section 197 of the Constitution is as follows:

"*Constitutional convention; how called.*—At such time as the general assembly may provide, a majority of the members elected to each house being recorded in the affirmative, the question, 'shall there be a convention to revise the Constitution and amend the same?' shall be submitted to the electors qualified to vote for members of the general assembly; and in case a majority of the electors so qualified, voting thereon, shall vote in favor of a convention for such purpose, the general assembly, at its next session, shall provide for the election of delegates to such convention; and no convention for such purpose shall be otherwise called."

Section 196 is another very material and pertinent section of the Constitution. It reads as follows:

"*Amendments.*—Any amendment or amendments to the Constitution may be proposed in the senate or house of

delegates, and if the same shall be agreed to by a majority of the members elected to each of the two houses, such proposed amendment or amendments shall be entered on their journals, with the ayes and noes taken thereon, and referred to the general assembly at its first regular session held after the next general election of members of the house of delegates, and shall be published for three months previous to the time of such election. If, at such regular session or any subsequent extra session of that general assembly the proposed amendment or amendments shall be agreed to by a majority of all the members elected to each house, then it shall be the duty of the general assembly to submit such proposed amendment or amendments to the people, in such manner and at such times as it shall prescribe; and if the people shall approve and ratify such amendment or amendments by a majority of the electors, qualified to vote for members of the general assembly, voting thereon, such amendment or amendments shall become part of the Constitution."

The position of the respondent is that, "the Act restricts the question submitted, it restricts the effect of the electors' vote on the question, and it restricts the purpose of the convention; while the Constitution, section 197, stipulates an unrestricted submission, an unrestricted question, and an unrestricted answer, with no strictures upon the convention's purpose."

The petitioner contends that the Act submits to the people the question whether they desire a convention possessed only of the powers defined in the Act, and if a majority of the electors vote for such a convention they, the electors, and not the legislature, will limit the powers.

The petitioner also contends that in calling a constitutional convention pursuant to section 197 of the Constitution it is not necessary that such convention be possessed of unlimited sovereign powers.

The petitioner further contends that the General Assembly may submit to the people the question, whether or not some of the powers of the convention are to be restricted. He

asserts that it is not essential that the entire Constitution be laid before the convention in order to effect a revision and amendments of any particular part or parts of the Constitution.

Finally the petitioner contends that sections 196 and 197 of the Constitution are not mutually exclusive, that they do not occupy separate fields and that the Governor, the legislature, and the people of Virginia, have rejected the idea that the two sections are mutually exclusive by their action in employing section 196 instead of section 197 for the purpose of the general revision of the Constitution of 1928.

■ ■ We are not concerned with the wisdom or expediency of the challenged Act. We are interested only in whether it is in conflict with and forbidden by section 197 of the Constitution. The reason these changes are sought to be made in the Constitution by the convention method instead of by the procedure under section 196 is set forth in the preamble to the Act. Of course, we must presume that this Act of the legislature is valid, and unless it is clearly prohibited by the provisions of section 197 of the Constitution it must stand. That section does not expressly or impliedly forbid the legislation here questioned. It does not provide that the question of whether there shall be a convention to revise the *whole* Constitution shall be submitted to the electors. The affirmative vote of the electors on the question as to whether the Constitution shall be revised and amended in any of its particular parts is not prohibited. For instance it might be necessary and expedient that a convention be called to revise and amend the tax laws of the Constitution or the suffrage laws without amending and revising the rest of the Constitution. There is no language in section 197 which would prohibit such a partial revision.

A bare reading of the Act will clearly disclose that it simply submits to the people the question whether they wish to have a convention possessing the limited powers which are defined in the Act. If they vote in favor of such a convention, they and not the legislature, will limit the work of the convention and its scope, and the convention to be held

will be limited in its authority to effecting the amendments submitted to and approved by the electors. The distinguished counsel for respondent concedes that this is so if the Act be valid.

The authorities generally sustain the petitioner's contention. *In re Opinion to the Governor*, 55 R. I. 56, 178 A. 433, 452, the principle was stated in this clear language:

"In the second instance, the legislature summons the convention only after the people have expressed their will to this effect. If, at the time the question of calling the convention is submitted to them, the people are informed of the scope of the convention and the manner in which it is to conduct its deliberation, and report its results by virtue of the Act of the general assembly specifying such matters, then a convention called in this manner will be limited as therein set forth and the convention will then be bound to confine itself within the stated limits of the act of the assembly. The reason for this is that it is the people, under such circumstances, who prescribe the conditions in the legislative act by approving the call for the convention in accordance with the provisions of such act. The legislature merely proposes the conditions. It is the vote of the people for the convention that ratifies them and makes them binding upon the delegates. 6 R. C. L., sec. 18, p. 27. For this reason, in order that the delegates be so bound, it is necessary for the General Assembly to propose the conditions before the election is held, and to take all necessary steps to bring them to the attention of the people seasonably before the time of voting at the election."

Again in *Opinion of the Justices*, 6 Cush. (Mass.) 573, at page 575, this was said:

" * * * If, however, the people should, by the terms of their vote, decide to call a convention of delegates to consider the expediency of altering the Constitution *in some particular part thereof*, we are of opinion that such delegates would derive their whole authority and commission from such vote; and, upon the general principles governing the delegation of power and authority, they would have no

right, under such vote, to act upon and propose amendments in other parts of the Constitution not so specified." (Italics supplied.)

In 11 Am. Jur., Constitutional Law, sec. 27, the author makes this clear statement of the principle:

" * * * People who, acting under a proper resolution of the legislature, vote in favor of calling a constitutional convention are presumed to ratify the terms of the legislative call, which thereby becomes the basis of the authority delegated (by the people) to the convention. * * * "

Other interesting and supporting cases are: *Bradford* v. *Shine*, 13 Fla. 393, 7 Am. Rep. 239; *State* v. *American Sugar Refin. Co.*, 137 La. 407, 68 So. 742; *Wells* v. *Bain*, 75 Pa. 39, 15 Am. Rep. 563; *In re Opinion to the Governor*, 55 R. I. 56, 178 A. 433.

The power to amend or revise in whole or in part the Virginia Constitution resides in the people, not in the State legislature. The people are possessed with ultimate sovereignty and are the source of all State authority. See section 2, Virginia Constitution. The people have the unlimited power to control and alter their Constitution, subject only to such limitations and restraints as may be imposed by the Constitution of the United States. Cooley's Constitutional Limitations, 8th Ed., Vol. 1, p. 84. The people of Virginia have placed sections 196 and 197 in the Constitution to define the means by which it may be revised and amended. They must be followed if a valid revision or amendment is to result. 11 Am. Jur., Constitutional Law, sec. 22.

The respondent argues that the legislature, in restricting the question submitted by the Act, thereby limits the scope of the convention. With this we cannot agree, for the people themselves limit the work of the convention, if they vote for it under the terms of the Act. As previously indicated, section 197 of the Constitution does not prohibit the revision and amendment of a part of the Constitution by the convention method. The purpose of the procedure initiated

here is to revise the Constitution and amend the same—not the entire Constitution, but a part thereof.

An amendment of a Constitution, and a revision of a Constitution are defined in this language in 16 C. J. S., Constitutional Law, sec. 7, p. 31: "Every proposition which affects a change in a Constitution, or adds or takes away from it, is an amendment * * * , while a revision implies a reexamination and restatement of the Constitution or some part of it in a corrected or improved form * * * ." As authority for this statement the author cites *State* v. *Cooney*, 70 Mont. 355, 225 P. 1007. Revision and amendment have been held synonymous terms. See *State* v. *Taylor*, 22 N. D. 362, 133 N. W. 1046.

In submitting the question to the electors whether there shall be a convention, the legislature is performing an exclusive function for the people delegated to it in section 197. In no other way may a convention be initiated in Virginia. If the legislature refused to submit the question to the electors whether there shall be a convention, nothing can be done about it except for the electors to replace its membership by others who will submit the question.

The sovereign power being in the people, it can be exercised only through an agency of the people. Cooley's Constitutional Limitations, 8th Ed., Vol. 1, p. 87. The constitutional convention is an agency of the people to formulate or amend and revise a Constitution. The convention does not possess all of the powers of the people but it can exercise only such powers as may be conferred upon it by the people. The people may confer upon it limited powers.

Undoubtedly the people have a right to "reform, alter or abolish", within democratic principles, a part or parts of their fundamental law without reforming, altering or abolishing all of it. The first binding declaration of this fundamental principle was made on the 6th of May, 1776, since which time it has been retained in the Constitution without substantial change as sections 2 and 3 of the Bill of Rights. The pertinent part, as originally approved, reads:

" * * * , when any government shall be found inadequate or contrary to these purposes, a majority of the community hath an indubitable, inalienable, and indefeasible right to reform, alter, or abolish it, in such manner as shall be judged most conducive to the public weal."

The people did not destroy their right to reform or alter a part or parts of the Constitution by means of a convention when they approved the provisions of section 197 of the present Constitution. If by section 197 the entire Constitution may be revised and amended, certainly the people, the source of all power, could exercise the lesser power and revise and amend only a part of it "in such manner as shall be judged (by the people) most conducive to the public weal."

Prior to the so-called Underwood Constitution which was assembled by an Act of Congress of the United States on December 3, 1867, there was no constitutional provision for making future changes in the Constitution. Then the authority to call a constitutional convention resided in the legislature. Under article 12 of the Underwood Constitution provision was made for amendments, and at the general election to be held in 1888 and each twentieth year thereafter, the question of calling a convention was to be submitted to the people, and also at such time as the General Assembly might by law provide, the question "shall there be a convention to revise the Constitution and amend the same?" was to be decided by the electors. It will be noted that the words used in the question are identical with those in our present section 197. It is further noted that in addition to the mandatory duty of submitting the question every twentieth year after 1888, the legislature, of its own motion, was given the power to submit to the electors the question whether to call a convention at any time.

The constitutional conventions of 1829 and of 1850-51, were called by the legislature, and their powers were limited, even though there was no constitutional provision for making future changes in the Constitution at the time.

The Honorable A. Caperton Braxton, a distinguished

member of the constitutional convention of 1901-02, in an interesting article in 7 Va. Law Register, at pages 93 and 94, speaking of the powers of a convention, said:

"But are the people, by the mere act of calling a convention, obliged to confer upon it all of their powers? Surely not. Upon what principle, for what reason, or by what analogy, can it be contended that the people cannot constitute a limited, as well as a general, agency—that they cannot employ an agent or appoint a representative to do a particular service for them, without surrendering to such agent or representative all of their powers and functions? To refuse to the people this right would be to deny them the powers conceded to every individual or private corporation—a position hard to be maintained with any show of consistency by those who, at the same time, claim for the people a transcendent, limitless omnipotence, even beyond their real powers."

In Jameson on Constitutional Conventions (4th ed.), p. 364, this is said:

"By universal custom, as well as by the express provision of most of the American Constitutions, no person or body in a State has power to call a convention but the legislature; and none but the legislature can either prescribe or indicate the purposes for which it is to assemble. Accordingly, as we shall see, our legislatures nearly always expressly declare, with more or less precision, those purposes, whether to make a general revision of the Constitution, or to consider specific subjects, accompanying that declaration sometimes with a prohibition to consider other subjects. While a legislature, however, has a clear constitutional right, in its discretion, to prescribe the scope of the duties of the convention it calls, it would seem to be unwise to hamper, by too stringent limitations, a body which, if it meet at all, ought to meet for some rational purpose, and that, in general, it could not do if its work were laid out for it too minutely in advance, by imperative provisions of law."

But in Virginia, since the Underwood Constitution of 1869, and later, by virtue of the convention of 1902, *the*

*people*, by article 12 of the former, and section 197 of the latter, may authorize a convention. They, by their vote, determine whether to call a convention or not. Section 197 expressly provides, "At such time as the General Assembly may provide * * * the question 'shall there be a convention to revise the Constitution and amend the same' shall be submitted to the electors * * * ." Certainly since the enactment of section 197 in 1902 the electors have possessed the exclusive power and right to call a convention. The legislature, as we have seen, is purely an agent of the people to ascertain their wishes.

Counsel for the respondent freely admits that section 197 permits a convention for the purpose of *amending* the Constitution. In his brief he says: " * * * We again remind the Court that *provision for amendment by convention* exists in the Constitution." The power to amend, as well as the power to revise, by a convention is expressly incorporated in section 197, for it says in the question to the electors, "Shall there be a convention to revise the Constitution and *amend* the same?" If the electors vote in favor of a convention, it may amend the Constitution as well as revise it, and where the legislature, in the performance of its representative function, asks the electors if they desire a convention to amend or revise a certain part of the Constitution but not the whole Constitution, an affirmative vote of the people on such question would have the binding effect of the people themselves limiting the scope of the convention to the very portion of the Constitution suggested to them by the legislature. The wishes of the people are supreme. Some agency must ascertain the desire of the people, and the legislature, by section 197, has been selected by them to do so.

In the convention of 1901-02 section 197 was debated at length by Mr. Barbour, Mr. Braxton, and others. These debates are found on pages 2752 to 2759, inclusive, in Vol. 2 of the debates. It was stated that unless the legislature submitted to the people the question as to whether there should be a convention, it could call a convention with unlimited powers at any time. It is there shown that the main

purpose of section 197 is to prohibit the legislature calling a convention of its own motion whenever it might want to do so without first ascertaining the wishes of the people. A reading of the debates will justify this conclusion.

■ ■ Sections 196 and 197 were placed in the Constitution to facilitate the making of future changes in the Constitution, not to obstruct them. By section 196 the legislature *proposes* amendments which the people adopt or reject. By section 197 the legislature *propounds* the question to the people, who by their vote answer whether they do or do not want a convention. Prior to the Underwood Constitution the legislature not only called the convention but actually set out its work, prescribing the changes to be made. The legislatures convening just prior to the conventions of 1829, 1851, and the secession convention of 1861, limited the scope of those conventions. Congress limited the scope of the Convention of 1869. The manifest purpose and effect of section 197 is not to curtail the right to limit the work of a convention but rather to take that right from the legislature and place it in the people. So now the people have the right to limit the work of a convention in any respect they choose, section 197 providing the machinery for that purpose.

The constitutional changes that will be necessary to carry out the purposes of the Act of the legislature, if the people vote for a convention, will not be limited to the adoption of a single amendment to a single section. In fact a large part of article 2, embracing many sections of the Constitution will be affected. Some of those sections may have to be substantially revised and rewritten. It may be necessary to amend others. The convention method, in addition to being more expeditious under the conditions obtaining, likely will more readily lend itself to effectuating these changes than the amendment process under section 196.

■ We are satisfied that the convention of 1901-02 and the revision of 1928 did not intend, by section 197, to take away from the people the right to vote to call a convention to revise and amend a portion of the Constitution. Our

conclusion is that the legislative Act brought in question by this proceeding does not run counter to that section.

The respondent contends that sections 196 and 197 occupy separate fields, and that each within its respective field is exclusive of the other. It is stated that amending the Constitution by convention, as provided in section 197, is available to the people only in cases where a general revision of the entire Constitution is proposed, whereas section 196 can be used only when a few specific amendments are to be submitted to the people for approval or rejection. It is. contended that the amendment sought to be made by the challenged Act should have been made under section 196 rather than by the convention method under section 197.

In our opinion sections 196 and 197 are not mutually exclusive. Amendments under section 196 are those which come in due course, but the procedure therein provided for requires a considerable period of time. On the other hand, in an emergency, when time is of the essence, it might be better to proceed under section 197. Whether the one course rather than the other should be followed is a matter delegated to the discretion of the General Assembly.

In 1928 we had a general revision of the Constitution without a convention. This revision was effected not by following the provisions of section 197, but by following those of section 196. The General Assembly in 1926, Acts 1926, page 797, created a commission of seven members to be appointed by the Governor, "To study the Constitution of Virginia and propose in detail such revision of the same as it may be of the opinion will be for the best interest of the Commonwealth." The commission reported to the Extra Session of 1927. See Acts 1927, page 46. In this report it was proposed to strike out from the Constitution all of the articles and sections thereof except five, and insert in lieu thereof the articles and sections appearing on pages 47 to 103, inclusive, of said Acts. The next regular session of the General Assembly in 1928 acted upon the 1927 joint resolutions proposing said amendments and revisions by enacting chapter 95, page 636, of the Acts of 1928, entitled

"An act to provide for the submission to the people for ratification or rejection the proposed revision and/or amendments". Then follow all of the articles and sections in the Constitution except section 170. Included in the revision were both sections 196 and 197, the former with a slight, immaterial change, the latter with no change. Provision was made for the vote to be taken on the *general revision*. It was framed in this language: "For the general revision of the Constitution of Virginia except sections * * * ." The vote was favorable, and Virginia had a new Constitution. In fact, every section was re-examined. The Governor, the legislature, and the people all approved and ratified the revised Constitution. No one challenged its validity on the ground that it had been revised and amended in its entirety under the provisions of section 196 instead of by a convention under the provisions of section 197. In this revised Constitution, as we have already stated, sections 196 and 197 were readopted.

Section 196 was in effect construed to be broad enough to authorize a general revision of the Constitution without a convention. That construction makes available that section (196) for a revision and amendment of the entire Constitution. Its meaning is identical with the meaning of the words used in section 197, "revise the Constitution and amend the same". This would seem to be conclusive of the interchangeability of the two sections, and that now the people are permitted to use either section which better fits the occasion to amend or revise the Constitution. That construction is made conclusive by the readoption of the two sections, 196 and 197, in the revision of 1928.

On the whole we are of opinion that the Act in question (Acts 1944, Ex. Sess., ch. 1) does not contravene any provision in the Constitution and is therefore valid; that in the event a majority of the electors vote in favor of the convention, the powers of the convention to consider, adopt or propose revisions or amendments to the Constitution will be legally restricted or limited, as defined in the Act, and in the informatory statement printed on the ballot

to be used in the proposed referendum election; and that the mandamus prayed for in the petition in this cause should issue.

*Writ awarded.*

HOLT, J., concurring.

I am in complete accord with the conclusions which our court has reached. It is good to know that they find ample support in ancient precedents and modern instances. But we do not have to rely upon extraneous authorities; nor to look beyond the letter of our Constitution. Section 196 provides for amendments in due course. Before they can become effective, they must have been approved by two Legislatures. Relief under these conditions in the instant case is manifestly inadequate.

Emergencies can and do arise in which time may be of the essence. The power to meet them rests in the people. It is a substantive and continuing right. Procedural and complete relief is pointed out in section 197. It is interesting to note that nowhere are provisions made for an unrestricted convention. Such a convention would be a revolutionary convention, but provisions are made for a convention to revise the Constitution and amend the same. The extent of this revision or of these amendments is nowhere defined. That there are such limitations is conceded. No one would contend that in order to proceed at all every section of our present Constitution should be revised or amended or that the Bill of Rights should be tinkered with.

Suggestions for amendments and revision come from the Legislature. Plainly John Doe cannot call a constitutional convention unless he proposes to start a revolution. In due course they are submitted to the qualified electors. If not approved, there can be no convention, and that is that. If the electors do approve, a convention is called that they may be adopted.

The Legislature, of course, cannot change the Constitu-

tion; the people can. That is an inalienable right guaranteed to them, and if not guaranteed it would still be inalienable. In the event of approval, there is delegated to the convention the power to make suggested changes, and no other power is delegated to it. Those made beyond this delegated power would be void. The Legislature makes suggestions, but the mandate to the convention comes from the people. They may make any changes which meet with their approval, provided they do not undertake to override the Federal Constitution. They may change one section of their own constitution or two, at their election.

CAMPBELL, C. J., dissenting.

I am unable to concur in the conclusion reached by a majority of the court, that the act in question—"to provide for the submitting to the qualified electors the question whether there shall be a convention to revise and amend certain provisions of the Constitution of Virginia and providing an appropriation therefor"—is constitutional.

In the oral argument, it was suggested by the Attorney General that only certain elements were opposed to the act.

I have no intention of entering upon a political discussion of the question involved. I feel impelled, however, to state that as a father of three sons who volunteered for foreign service shortly after Pearl Harbor, two of whom are now serving their country in the Pacific area, and the eldest of whom, while discharging his duties as a bombardier on a B-24, was killed in action in the European area on May 23, 1944, I have no fear whatever that I will be charged with disloyalty to our service men and women.

As one of two State officers who for fifty years has been affiliated with what is known in Virginia as "the Organization," I have no apprehension of being charged with being an "organization baiter."

As the youngest member of the Constitutional Conven-

tion of 1901-02, I voted for the poll tax provision of the Constitution.

Hence, I approach this vital and important question without bias or prejudice. It is because of my conscientious conviction that the act in question is subversive of my every concept of democratic principles that I feel constrained to dissent. Though it be admitted that the act has its Genesis in the beneficent purpose of furnishing the service man a medium for the exercise of the right of suffrage without the payment of a poll tax, its Revelation is to deny him the right of democratic action in selecting his public servants to serve in a Constitutional Convention unhampered by legislative restriction.

The fundamental question involved in the case at bar is: Which shall prevail, expediency or legality? If 'expediency is to prevail, then our boys who have died in order that liberty and democracy (as established by their forefathers) should continue, have died in vain.

The legal question involved is this: Has the General Assembly the power to restrict the action of a Constitutional Convention called into being under the provisions of section 197 of the Constitution?

In discussing the question, I wish to acknowledge my indebtedness to Honorable Albert V. Bryan, the attorney appointed by this court to represent the comptroller, for the learned and illuminating brief filed by him.

It is stated and re-stated in the majority opinion that the electors, and not the legislature, impose the restraint provided for in the act. This argument is but "a sticking in the bark."

Under the provisions of the act, the electors, when they exercise their right of suffrage, have only one of two choices —either to vote "no," or to vote for a convention in which their representatives have no volition save that prescribed by the legislature in the act. If, as contended, the power rests in the electors to call a limited convention, then the friendly office of the legislature was unnecessary. Except in the performance of a revolutionary act, the people and the legisla-

ture are controlled by constitutional limitations. How can a legislature restrict a constitutional right?

The compass which determines the constitutional course is section 197 of our Constitution. That section reads:

"At such time as the General Assembly may provide, a majority of the members elected to each house being recorded in the affirmative, the question 'Shall there be a convention to revise the Constitution and amend the same?' shall be submitted to the electors qualified to vote for members of the General Assembly; * * * "

In the majority opinion, this is said:

"That section does not expressly or impliedly forbid the legislation here questioned."

If the mandatory language, "To revise *the constitution* and *amend the same*," is not a prohibition to merely *revise and amend only a part* of the Constitution, then the English language has lost its potency.

In Mr. Bryan's brief this is said:

"But the underlying and primary consideration is whether the General Assembly can submit to the electorate less than the full and unrestricted question, or may submit the full and unrestricted question but accord the answer of the electors a restricted or interpreted meaning, thereby giving the electorate no option but to call or reject a type of convention unknown to the Constitution.

"The General Assembly cannot constitutionally pose an unconstitutional question. Nor can it pose a diluted constitutional question and doctor the answer.

"On this score Dodd, The Revision and Amendment of State Constitutions, says this (p. 74):

" 'In some cases the view has been taken that the people by voting for delegates under a lgeislative act or by acting thereunder, themselves adopt the restrictions placed upon the conventions by such act, and that the restrictions sought to be placed upon the convention by the legislature thus become restrictions imposed by the people, *but in most cases this is not true.*' "

As I comprehend the full import of section 197 of the

Constitution, it provides for the calling of a convention without limitation to *revise and amend* the Constitution. If it means otherwise, then there is no reason for the existence of section 196 of the Constitution which provides merely for amendments to the Constitution.

It cannot be denied that the General Assembly is the creature of the Constitution. That being true, then it is a paradox to say that the creature, by legislative fiat, can become greater than its creator.

The historical sketch in the opinion regarding constitutional conventions in Virginia, while illuminating, throws no light on the dominant issue, to-wit, a construction of section 197 of the Constitution. In none of the conventions mentioned was there an attempt made to restrict the operation of the convention. Whatever action has heretofore been taken, was taken without reference to a provision similar to section 197. That section offers the only medium to "amend and revise the constitution." It is inescapable that when the Constitution embodies such a provision, the Constitution then dominates the field of amendment and revision to the exclusion of every other governmental body; that the purpose there expressed cannot be modified; that the ways and means for the submission of the question and call of the convention are likewise exclusive; and that strict adherence is requisite.

I challenge the applicability of the authorities cited in the opinion and relied upon to sustain the power of restriction. In the cases cited there is not found a single expression which indicates that the case involved a question similar to the one here involved. Wherever provision is found in the Constitution for a convention to amend and revise, no case and no text-writer allows the legislature to restrict the purpose of the convention.

*In re Opinion to the Governor* (1935), 55 R. I. 56, 178 A. 433, strongly relied upon, is a case involving an advisory opinion merely. The opinion clearly sets forth that the Rhode Island Constitution "contains no mention of a constitutional change," except by steps equivalent to our section

196, viz., amendments. The sole holding of this case was that the provision in the Rhode Island Constitution allowing the legislature to submit proposals for amendment did not exclude the common law right of the legislature to submit to the people the question of whether they wished a constitutional convention to amend the Constitution, and that in such a convention (not provided for in the Constitution) the legislature could submit to the people the question of revising or amending only a part of the Constitution.

Dr. Dodd, in his work The Revision and Amendment of State Constitutions, at page 80, has this to say:

"The better view would seem to be that the convention is a regular organ of the state (although as a rule called only at long intervals)—neither sovereign nor subordinate to the legislature, but independent within its proper sphere. Under this view the *legislature cannot bind the convention as to what shall be placed in the constitution, or as to the exercise of its proper duties*."

Great reliance is placed upon the view expressed by Mr. Braxton in the quotation from his article in 7 Va. Law Register. I have no quarrel with the individual view of Mr. Braxton for whom I had a deep affection and a high regard, but it appears from the "Debates Constitutional Convention" that his views were not accepted by a majority of his brethren, as will hereafter be shown. In the majority opinion we read this language:

"In the convention of 1901-02, section 197 was debated at length by Mr. Barbour, Mr. Braxton, and others. These debates are found on pages 2752 to 2759, inclusive, in Volume 2 of the debates. It was stated that unless the legislature submitted to the people the question of whether there should be a convention, it could call a convention with unlimited powers at any time. It is there shown that the main purpose of section 197 is to prohibit the legislature calling a convention of its own motion whenever it might want to do so without first ascertaining the wishes of the people. A reading of the debates will justify this conclusion."

I am unable to agree with the construction placed upon the debate in regard to section 197. At the risk of being prolix, I deem it necessary for the sake of clarity to set forth the pertinent part of what was said by Mr. Barbour and Mr. Braxton in regard to the resolution offered by Mr. Barbour and the amendment thereto offered by Mr. Braxton:

"Mr. Barbour: Mr. President, I now move to reinsert section 2 as reported from the committee. I will ask the secretary to read it.

"Sec. 2. At such time as the General Assembly may by law provide, the question, 'Shall there be a Convention to revise the Constitution and amend the same?' shall be decided by the electors qualified to vote for members of the General Assembly; and in case a majority of the electors so qualified, voting at such election, shall decide in favor of a convention for such purposes, the General Assembly, at its next session, shall provide by law for the election of delegates to such convention.

\*　　　\*　　　\*　　　\*　　　\*　　　\*

"Mr. Barbour: Mr. President, I desire merely to call the attention of the Convention to the fact that unless they have this provision or some similar provision in the Constitution, every Legislature hereafter elected would have absolute power to call a Constitutional Convention with unlimited powers, whenever they desired to do so, and without ever submitting the question to a vote of the people. The decision to strike this article out was sprung on the Convention in Committee of the Whole the other evening, within five minutes of the time when, under the rule, we had to take a vote on it, and there was absolutely no opportunity to consider it. Since then I have given the matter careful examination, and I have no hesitation in saying, as the result of that investigation, that unless there is a way pointed out in the Constitution for calling a Constitutional Convention, the power of the Legislature in that respect is unlimited. It is too large a power to be granted to any Legislative assembly elected for the ordinary purposes of legislation.

I do hope the Convention will reinsert this or some similar provision which will regulate this power and the exercise of it."

\*        \*        \*        \*        \*        \*

"Mr. Braxton:   Mr. President, is it in order to offer a substitute?

"The President:   There is an amendment pending offered by the gentleman from Culpeper (Mr. Barbour) to which the gentleman from Richmond (Mr. Gordon) has offered an amendment.   It is in order to offer to amend either the original proposition offered by the gentleman from Culpeper, or that offered by the gentleman from Richmond; but if the gentleman offers an independent proposition it must be a substitute for the whole.

"Mr. Braxton: I will offer this, then, as an amendment to the amendment offered by the gentleman from Culpeper: Strike out the words 'shall there be a Convention to revise the Constitution and amend the same,' and so on, in line 2, down to and including the words 'General Assembly' in line 5, and insert in lieu thereof the words:

"The question shall be decided by the electors qualified to vote for members of the General Assembly, shall there be a Constitutional Convention, in which act the powers of the proposed Convention in the matter of proclaiming or submitting the Constitution shall be specified.

"Mr. President, it seems to me that this is a right important matter we are on.   I fully agree with what my friend from Culpeper (Mr. Barbour) says, that there ought to be some provision in here to prevent Constitutional Conventions being called by any Legislature at any time, clothed with any powers they may choose.,  In the absence of any provision to that effect, I take it the present Legislature could call a Constitutional Convention to sit this summer, with absolute power to proclaim a new Constitution, and all the people could do would be to elect delegates thereto.

"As I understand the law in this matter it is that this Convention has not the power to make any enactment which

will prevent the people having a reasonable opportunity of amending this Constitution; but it does have the power of prescribing reasonable rules and regulations for the carrying out of that thing, and if we undertake to put a provision in here whereby we cut the people off entirely from amending it, it is absolutely void; but if we put a provision in here which prescribes reasonable regulations and methods for accomplishing that purpose, they are exclusive.

"It seems to me, Mr. President, that the people have the innate right to call a Convention to propose amendments to it, or to call a Convention and leave it to the Convention to say whether they will proclaim it or submit it as they choose; and that any provision we adopt which cuts the people off from the right to do any one of those three things is curtailing the power of the people and not merely providing reasonable regulations for carrying out the power. If we say that the only question that can be submitted to the people is the question Can a Convention be called to amend the Constitution?, we preclude them from calling a Convention to propose amendments to the Constitution and we preclude them calling a convention to—

"Mr. Barbour: Do we not provide here for a system for proposing amendments to the Constitution?

"Mr. Braxton: A system for proposing them to the Legislature, but not through the Convention. The proposition I make is that through every Constitutional Convention they have the right to propose amendments, to enact amendments or to give plenary power to the Convention to do either they choose. When we undertake to provide reasonable regulations for them, they must not be of such a character as to cut them off entirely from doing either one of these things. In order that the people may speak upon that, the Legislature must propose a question to them and it seems to me that the idea embodied in the amendment which I propose is the most regular one; that the Legislature, whenever they think a Constitutional Convention should be called, shall, in their act submitting the question to the people, say what sort of Convention it is proposed to call. Do you pro-

pose to call one to proclaim a Constitution? Do you propose to call one to propose amendments to it, or do you propose to call one to give plenary power to proclaim or propose it? *Say in the act what sort of a Convention you want and then leave it to the people whether they will call that kind of a Convention.* (Italics supplied.) Then, when the Convention is called, the question will never again arise because the act, which submitted the question to the people and which received its force from the subsequent vote of the people, would prescribe, on its face, the exact powers of the Convention and when a man voted for such a Convention he would not have to depend upon the declarations of political convention, but he would know absolutely whether he was voting for one to submit the Constitution or whether he was voting for a Convention which was to proclaim the Constitution or whether he was voting for a Convention which could do either it chose. If you wish to accomplish that purpose I think it can be done under the language I propose. The question that shall be submitted to the people is not 'Shall a Convention be called to amend the Constitution?' because I contend that amending it and proposing amendments to it are different things. The question is, 'Shall there be a Constitutional Convention held as prescribed in the act submitting the question, in which act the powers of the proposed Convention in the matter of proclaiming or submitting the new Constitution shall be specified?' I say, Mr. President, that by and in this way you can accomplish these purposes. You prescribe a regular and orderly method of exercising this function by the people. At the same time you do not cut them off from the free exercise of their rights but leave it to them or to the Legislature to submit to them either one of these questions they choose. I think this is a matter of a great deal of importance and I trust it may be the pleasure of the Convention to adopt, at least in substance, the idea involved in this amendment. I would be very much gratified if my friend from Culpeper could see his way clear to agree with me, in substance.

"Mr. Barbour: Mr. President, I am very sorry that I cannot see my way clear to accept the suggestion of my friend from Augusta. It seems to me that when we provide in this Constitution a method by which amendments may be proposed to the Constitution and then provide another way by which the people, if they shall see fit to do so, can call another Convention with power either to proclaim or to submit their work to the people, we have done all we ought to do in this matter. It is impossible for the people to judge wisely, in advance, as to what should be done with the Constitution which is prepared by the Convention.

"It is possible for the members of the Convention themselves, to tell what is just and wise and proper to be done with such an instrument. The best way is to follow the course that has heretofore been followed in this respect and leave that matter to the Convention itself, as is done under the provisions of the present Constitution of the State of Virginia. The language which has been reported from the committee is exactly the language of the Constitution under which we are acting, except that the former provision contained the clause that this question should be submitted every twenty years whether or no. It has never happened that this period of twenty years came at a time when the people thought proper to call a Convention. It is not likely that such a thing will happen in the future. *This leaves it absolutely discretionary with the Legislature to submit this question when they want to, in the future, and the construction which will have been put upon this clause by this Convention, itself, will leave no doubt as to what is the meaning of the language. It seems to me that is an advantage and that we ought to adopt language which we are acting under ourselves and which we have construed ourselves.* (Italics added.)

\*     \*     \*     \*     \*     \*

"The President: The question is on agreeing to the amendment offered by the gentleman from Augusta to the amendment proposed by the gentleman from Culpeper.

"Ayes—Messrs. Braxton, Clarence J. Campbell, Davis, Earman, Epes, Hamilton, Harrison, G. W. Jones, Lincoln, Pedigo, Portlock, Robertson, Stuart, and Willis—14.

"Noes—Messrs. Allen, George K. Anderson, W. A. Anderson, Ayers, Barbour, Boaz, Brown, Carter, Chapman, Dunaway, Eggleston, Fairfax, Fletcher, Garnett, Gilmore, James W. Gordon, Green, Gwyn, Hancock, Hardy, Hatton, Ingram, Lindsay, McIlwaine, Meredith, Moncure, R. Walton Moore, Mundy, Orr, Parks, Pollard, Quarles, Richmond, Rives, Summers, Tarry, Thornton, Turnbull, Watson, Wise, Withers, and the President—42."

The amendment was rejected.

The resolution offered by Mr. Barbour was agreed to: Ayes 31, Noes 25.

As a member of the Convention I did not participate in the discussion of this matter, nor did I vote on the question. It does seem to me, however, that it was not the main purpose of the resolution of Mr. Barbour to prohibit the legislature calling a convention of its own, but that the main purpose of the resolution (as is the main purpose of section 197), was to prohibit the calling of a convention with powers restricted by the legislature.

The language of Honorable James W. Gordon opposing the Braxton resolution is most apposite:

"Under the provision submitted by the gentleman from Augusta, (Mr. Braxton) he absolutely ties a man down to not only voting for or against the Constitution, but to voting on a particular method which the Legislature has pointed out. For that reason it seems to me it would be unwise to adopt his amendment."

In my opinion the petitioner has failed to carry the burden of showing the power of the legislature to restrict the proposed convention and, therefore, the writ should be denied.