**OPINION OF THE JUSTICES of the Supreme Court in Response to a Question Propounded by the Governor of Delaware.**

Supreme Court of Delaware.

March 2, 1970.

To His Excellency Russell W. Peterson
Governor of Delaware

Reference is made to your letter dated January 22, 1970, requesting the opinions of the Justices upon the following question:

"Does Article 16, Section 1, of the Delaware Constitution permit the adoption of an amendment or amendments which would revise the entire Constitution?"

As the basis for the question, your letter explains:

"Legislation will soon be introduced in the General Assembly which will contain the proposals of the Constitutional Revision Commission set up by former Governor Charles L. Terry, Jr. This proposed revision concerns the entire State Constitution."

It is further stated that the opinions are requested, under 10 Del.C. § 141,[1] in the interest of public information and to enable you to discharge the duties of your office. We assume that the latter reference relates to the fact that the Report of the Constitutional Revision Commission, established by

56 Del.L. Ch. 189, has been presented to you for your consideration and appropriate action, thus bringing your request within the provisions of 10 Del.C. § 141.

## I.

The reply to the question requires consideration of the scope and meaning of Article 16, Sections 1 and 2 of the Delaware Constitution:

Section 1 of Article 16 provides for change of the Constitution by the agreement of two-thirds of all the members elected to each House of two successive General Assemblies, as follows:

"Section 1. Any amendment or amendments to this Constitution may be proposed in the Senate or House of Representatives; and if the same shall be agreed to by two-thirds of all the members elected to each House, such proposed amendment or amendments shall be entered on their journals, with the yeas and nays taken thereon, and the Secretary of State shall cause such proposed amendment or amendments to be published three months before the next general election in at last three newspapers in each county in which such newspapers shall be published; and if in the General Assembly next after the said election such proposed amendment or amendments shall upon yea and nay vote be agreed to by two-thirds of all the members elected to each House, the same shall thereupon become part of the Constitution."

Section 2 of Article 16 provides for change of the Constitution by Convention as follows:

"Section 2. The General Assembly by a two-thirds vote of all the members

---

1. 10 Del.C. § 141 provides:
   "§ 141. Opinions of the Justices upon request of the Governor
   "The Justices of the Supreme Court, whenever the Governor of this State shall require it for public information, or to enable him to discharge the duties of his office with fidelity, shall give him their opinions in writing touching the proper construction of any provision in the Constitution of this State or of the United States, or the constitutionality of any law enacted by the Legislature of this State."
   See also 29 Del.C. § 2102.

elected to each House may from time to time provide for the submission to the qualified electors of the State at the general election next thereafter the question, 'Shall there be a Convention to revise the Constitution and amend the same?'; and upon such submission, if a majority of those voting on said question shall decide in favor of a Convention for such purpose, the General Assembly at its next session shall provide for the election of delegates to such convention at the next general election. Such Convention shall be composed of forty-one delegates, one of whom shall be chosen from each Representative District by the qualified electors thereof, and two of whom shall be chosen from New Castle County, two from Kent County and two from Sussex County by the qualified electors thereof respectively. * * *."[2]

Section 2 then specifies procedures for the conduct of the business of a Convention.

## II.

· In our judgment, the problem presented by your question is two-fold: (1) does our Constitution, by Article 16, Sections 1 and 2, distinguish between constitutional "amendments," on the one · hand, and a constitutional "revision," on the other, and (2) if so, what is a "revision" within the meaning of Section 2?

## III.

We are of the opinion that a distinction is made by Art. 16 between "amendments" to the Constitution under Section 1 and a "revision" thereof under Section 2.

There is ambiguity in the two terms as used in our Constitution. In a sense, every

amendment to the Constitution is a revision in that it is a change therein; but a revision, in the larger sense of the word, may be such a basic alteration of the original document as to surmount entirely the ordinary meaning of the word "amendment." The two terms are sometimes used interchangeably in constitutional provisions; in other cases, it is said that they are unrelated and should not be confused one with the other. See People v. Western Fruit Growers, 22 Cal.2d 494, 140 P.2d 13, 17 (1943); Rivera-Cruz v. Gray (Fla.Supr.Ct.) 104 So.2d 501 (1958); McFadden v. Jordan, 32 Cal.2d 330, 196 P. 2d 787 (1948). The ambiguity is pointed up by the use of the ·two words jointly in the question prescribed for the electorate by Section 2: "Shall there be a Convention to *revise* the Constitution and *amend* the same?"

In view of the ambiguity, we look to the Delaware Constitutional Debates of 1897 for insight into the intent of the drafters when they formulated Article 16 of the present Constitution and used the terms we are here called upon to construe.

It is ·clear from the Debates, we think, that the drafters distinguished between "amendments", on the one hand, and a "revision" on the other.[3] This conclusion is impelled by the following considerations:

1) Section 1 is, and throughout its evolution was, confined to amendment, whereas Section 2 refers, and throughout its evolution referred, to revision.

2) Throughout the Debates, the drafters referred to amendments under Section 1 as "changes" or "alterations" in the present Constitution, whereas they looked upon a "revision" under Section 2 as the "making"

2. Throughout any consideration of Section 2, it is to be noted that · the provision · thereof for one delegate to a Constitutional Convention from each of the 35 Representative Districts was expressly excepted by Art. 2 Del.Const. Section 2B from the effects of legislative reapportionment. See Roman v. Sincock, 377

U.S. 695, 84 S.Ct. 1449, 1457, 12 L.Ed.2d 620 (1964) and Article 2 Del.Const. Section 2A providing for additional Representative Districts.

3. · See 4 Del.Const. Debates 1897, pp. 2427–2507; 2971–2994.·

or the "manufacture" [4] of a "new" Constitution; as the "framing an organic law for the State." [5]

3) The drafters discussed at great length [6] the standards to be established for the qualification of delegates to a Constitutional Convention charged with the responsibility of "revising" the Constitution under Section 2, as compared with the constituency of a General Assembly vested with the power to make constitutional changes legislatively under Section 1. It was generally agreed by the drafters that a Constitutional Convention should be non-partisan,[7] with the major political parties having approximately equal representation; that it should not be limited entirely to representatives of local areas by Representative or Senatorial Districts but should have delegates at large from each of the Counties to assure getting the best qualified people without regard for residence within the County or party lines.[8] And recurrent throughout the Debates was the thought that a Constitutional Convention, specially elected for its expressed purpose, is more the direct agent of the people for that purpose than is a General Assembly.[9] This concept was and is in accord with authorities on the subject. E. g., Livermore v. Waite, 102 Cal. 113, 36 P. 424, 25 L.R.A. 312 (1894); Jackman v. Bodine, 43 N.J. 453, 205 A.2d 713, 725–726 (1964). It is also consistent with the arrangement whereunder the work-product of a Convention is not required by Section 2 to be submitted to the people for approval; whereas under Section 1 a proposal by a General Assembly for constitutional change is indirectly submitted to the people via the general election which must intervene be-

fore a successive General Assembly can effectuate the change.[10]

■ For these reasons, we are of the opinion that the Constitution differentiates between the procedure for adopting a series of legislative "amendments" under Section 1 of Article 16, and a "revision" which can be accomplished only by Constitutional Convention under Section 2 thereof.

## IV.

We come then to the second question: What is a "revision" which must be accomplished by Convention under Section 2, and how does it differ from a series of "amendments" which can be accomplished legislatively under Section 1?

■ A threshold truism is that the mere *number* of changes cannot make the difference. Legislative amendments are not limited in number by Section 1; and a "revision", to which Section 2 is applicable, does not come into being by reason of the mere number of changes or the mere fact that the changes concern the entire Constitution. It would be unreasonable to conclude that a large number of amendatory changes accomplishable piecemeal under Section 1, could not be accomplished simultaneously under that Section. Rather, it is the nature and scope of the changes contemplated that determine whether there is a "revision" subject to Section 2 or a series of "amendments" subject to Section 1.

■ As has been noted heretofore, in discussing the scope and nature of the "revision" contemplated under Section 2, the drafters had in mind the "making" of a "new" Constitution. This concept of a

4. 4 Del.Const. Debates 1897, pp. 2431, 2434, 2457, 2479.

5. *Ibid.* p. 2437.

6. *Ibid.* pp. 2427–2507; 2971–2994.

7. *Ibid.* pp. 2460, 2462, 2479, 2518.

8. 4 Del.Const. Debates 1897, pp. 2429, 2430, 2478, 2483, 2487.

9. E. g., " * * * They [Constitutional Conventions] are the people; they are derived from the people; they are the direct delegates from the people." *Ibid.* p. 2524; see also p. 2974.

10. See 4 Del.Const. Debates 1897, pp. 2973, 2974, 2976.

constitutional "revision", as contrasted with a series of constitutional "amendments", is in accord with the views and conclusions of the Supreme Court of California in Livermore v. Waite, 102 Cal. 113, 36 P. 424 (1894) and McFadden v. Jordan, 32 Cal.2d 330, 196 P.2d 787 (1948). We find the definitions in those cases persuasive. A constitutional "amendment" was defined therein as "such an addition or change within the lines of the original instrument as will effect an improvement or better carry out the purpose for which it was framed." A "revision" on the other hand, was held in *McFadden* to be the result of proposed changes in the basic governmental plan [11] because the effect thereof "would be to substantially alter the purpose and to attain objectives clearly beyond the lines of the Constitution as now cast." In short, to be a "revision" the result must be to effect a change in the basic philosophy which has cast our government in its present form.

■ We think those distinctions are supported by reason and authority. A constitutional "revision" makes substantial, basic, fundamental changes in the plan of government; it makes extensive alterations in the basic plan and substance of the existing document; it attains objectives and purposes beyond the lines of the present Constitution. A "revision" is more than a mere reorganization, restatement, modernization, abbreviation, consolidation, simplification, or clarification of the existing document.[12]

■ The latter type of change, making no substantial and fundamental change or alteration in the basic structure of State government, can be accomplished, we think, by legislative amendment under Section 1, as would any other changes that fall "within the lines of the original instrument" to constitute "an improvement or better carry out the purpose for which it was framed." Any change or changes that fall within such lines should be considered, in our opinion, "amendments" within Section 1; changes that do not fall within those lines must, in our opinion, be treated as "revisions" within the scope and application of Section 2.

V.

But it is not enough to distinguish a revision from a series of amendments and to ascertain the tests therefor. Each situation must be resolved upon its own facts and circumstances.

The nature and scope of the changes acceptable to the General Assembly are presently unknown. The ultimate action to be taken by the General Assembly on the proposals of the Constitutional Revision Commission remains to be seen. It is to those ultimate changes that the tests of "amendment" versus "revision" must be applied. At that stage, and with its final draft of contemplated changes before it, the General Assembly must determine (1) whether it may proceed legislatively under Section 1 because the proposed changes are amendatory; or (2) whether it must proceed by way of Constitutional Convention under Section 2 because the proposed changes are revisory.

When the General Assembly is confronted with that decision, it may be found that some of the changes contemplated are amendatory while others are revisory. In that event, it is our opinion that the Sec-

---

11. In McFadden v. Jordan, 32 Cal.2d 330, 196 P.2d 787 (1948) the proposed constitutional changes, which were found to constitute a "revision" and not merely "amendments", would have created, *inter alia,* a commission "substantially beyond the system of checks and balances which heretofore had characterized our governmental plan"; and by the proposed commission, "the functions of both the legislative and the judicial branches of our state government would be substantially curtailed."

12. It appears that most, if not all, of the changes recommended by the Constitutional Revision Commission fall within these categories.

tion 1 route may be followed as to the amendatory changes, and the Section 2 route may be simultaneously followed as to the revisory changes.[13] For, in this connection, we are of the opinion that Section 2 permits a partial revision of the Constitution by Convention.

In our view, neither Section 2 nor any other provision of our Constitution prohibits the General Assembly from limiting the question submitted to the electorate so as to ascertain its wishes regarding the call of a Convention for the purpose of revising specified parts of the Constitution only. If the electorate chooses to approve the calling of such limited Constitutional Convention, we are of the opinion that it may do so under Section 2. In such event, the people and not the General Assembly will have limited the work and scope of the Convention; and the authority of such Convention may not exceed the wishes of the people thus expressed. If, on the other hand, the electorate wishes to have the Section 2 question propounded to it by the General Assembly for an unlimited Constitutional Convention, it may make its wishes known to the legislative candidates at any general election.

It would be unreasonable, in our view, to construe Section 2 otherwise. It could not have been the intent of the drafters to deprive the people of the right and method of making a partial revision of the Constitution. Since a "revision" can be made only by Convention, and since it is unreasonable to assume that a partial revision is impermissible, it necessarily follows that a partial revision by a limited Convention can be decreed by the electorate, if it wishes, in response to an appropriate question propounded by the General Assembly under Section 2. We find support for this view in Staples v. Gilmer, 183 Va. 613, 33 S.E.2d 49 (1945). The Supreme Court of Appeals of Virginia there held that a limited Convention could be called under a constitutional provision almost precisely the same as our Section 2.[14] See also Annotation, 158 A.L.R. 512.

We conclude, therefore, that a decision as to the method of constitutional change must await a final ascertainment of the actual changes to be made and an item-by-item determination of whether they are amendatory or revisory in nature.

The foregoing is the unanimous opinion of the undersigned.

Respectfully submitted,

s/ Daniel F. Wolcott
Chief Justice

s/ James B. Carey
Associate Justice

s/ D. L. Herrmann
Associate Justice

---

13. See, however, the reference *supra* to the exception of Section 2 from the effects of legislative reapportionment.

14. It is clear that the 1897 drafters used the Constitutions of Virginia, Pennsylvania, and New York as models. E. g., 4 Del.Const. Debates 1897, p. 2407.