## SHEBOYGAN Co. *v.* PARKER.

1. A county "officer" is one by whom the county performs its usual political functions or offices of government; who exercises continuously, and as a part of the regular and permanent administration of government, its public powers, trusts, or duties. A fixed number of persons, specially and by name appointed by the legislature to act as a board of commissioners, in a matter about which, though relating immediately to the county, county officers, in the exercise of their general powers as such, and without special authority from the legislature, have not authority to act, are not county "officers."

2. Hence, when special authority was given by the legislature to the people of a county, to say whether or not they would subscribe to a railroad and bind themselves to pay for it, that body, in giving the authority, may properly direct the mode in which such subscription shall be made and paid for;—may, *ex. gr.* appoint special persons to make the subscription, and to issue bonds in behalf of the county therefor—even though the constitution of the State in which the county is provides that "all *county officers* shall be elected by the electors of the county," and though there may be a regular board of county supervisors elected accordingly, then administering the ordinary county affairs. Bonds so executed and issued bind the county.

NOTE. In this case, the statute enacted that any bonds issued under its provisions should be "of full and complete evidence both in law and equity to establish the indebtedness of the county."

THE constitution of Wisconsin ordains that "all *county officers* shall be elected by the *electors of the respective counties.*" With this fundamental law in force, and with a county board of supervisors in existence, who, under the constitution and laws, were the ordinary administrators of its affairs, the legislature of the State, by "an act to authorize the County of Sheboygan to aid in the construction of a railroad," constituted Lewis Curtis, "Billy Williams," and three other persons less peculiarly entitled, a board of commissioners for aiding the project. The act directed a vote of the people of the county to be taken, as to whether or not they would have a subscription "in pursuance of the act," and then authorized *these* commissioners to borrow money on the credit of the county, and to issue its bonds therefor. The bonds were to be signed by the president and secretary of *this* board, and countersigned by the clerk of the regular county board of supervisors, or by the county treasurer; and it was declared that, when thus prepared and issued, they should, "in the hands of any *bonâ fide* holders, be of *full and complete evidence to establish the indebtedness of the county according to their tenor and effect.*"

A vote of the people having decided in favor of the railroad, the bonds were issued with interest warrants or coupons annexed. These were not in the exactly usual form of *promises* to pay, or of declarations that so much money was due the bearer, at the semi-annual dates; but were *drafts* by "Lewis Curtis, President of the Board of the Sheboygan County Railroad Commissioners," on "the Treasurer of the County of Sheboygan," in favor of the bearer for so much, and was signed by Williams as "secretary."

A number of the warrants being due and unpaid, in the possession of one Parker, a *bonâ fide* holder, he sued the county, under its legal and corporate name of "The County Board of Supervisors of Sheboygan County," in the Circuit Court of Wisconsin, to enforce a payment of them.

On error from that court, where judgment was given against the county, the question was, whether the act constituting the new board was constitutional, and the county bound?

*Messrs. J. S. Brown, Buttrick, and Hill, for the County, plaintiff in error.* No persons but *county officers* can govern the county and regulate its affairs. True in all cases, this is certainly not least true in so important a matter as borrowing money, and binding the county by bonds to pay it back. These five persons were not " elected by the electors of the county," as the constitution requires county officers to be.

What are they? They are a corporation created for the purpose of aiding in the construction of a railroad. But by the principles of every free government, and of the constitution of Wisconsin, it is not in the power of the legislature to authorize one corporation to create a debt for another without the consent, express or implied, of the party to be charged. The bonds were issued by the new, excrescent, or " outside" board, on their own motion, and without the consent of the constituted authorities of the county. But a county cannot exercise its corporate powers in any other way than through its constitutional channels. If the legislature can confer such power as has been attempted to be exercised upon five men, they can confer it upon one, or upon the whole people. Reduced to its elements, the act in question authorizes A. to issue the bonds of B. to C. without B.'s consent.

Indeed, it is plain that this board has felt the truth of all this. Their interest warrants are in a peculiar form. They are not promises of any kind or to anybody; but are mere requests, unaccepted drafts from the board to the county treasurer to pay the bearer the amounts named in them. Now, the county treasurer has no power to pay money out on the order of any other person, corporation, or board, than the board of supervisors of the county. The coupons in this case are not such orders; they are not *assumpsits* of the county, and are incompetent, immaterial, and irrelevant to establish any demand against the county at all.

After argument by *Mr. M. H. Carpenter, contra, for the bondholder,*

Mr. Justice GRIER delivered the opinion of the court.

It is admitted that the bonds in question were issued in conformity with the statute of the Wisconsin legislature. By this statute, the bonds issued in pursuance of it are made " full and complete evidence, both in law and equity, to establish the indebtedness of the county according to their tenor and effect."

The objection is, that the act is unconstitutional and void. Is the objection well founded?

The commissioners or board of supervisors of a county, in the exercise of their general powers as such, have no authority to subscribe stock to railroads, and bind the people of the county to pay bonds issued for that purpose without special authority conferred upon them by the legislature. But when special authority is given to the people of a county to do these acts, and bind themselves by the issue of such bonds, the legislature may properly direct the mode in which it shall be effected. The persons specially appointed to act as agents for the people have a ministerial duty to perform in issuing the bonds, after the people, at an election held for the purpose, have assented that they shall be bound.

Such persons, in performance of their special duty, are in no proper sense, " county officers." They do not exercise any of the political functions of county officers, such as levying taxes, &c. They do not exercise " continuously, and as a part of the regular and permanent administration of the government, any important public powers, trusts, or duties."*

An officer of the county is one by whom the county performs its usual political functions; its functions of government. Any other persons appointed by the legislature and the people of the county, would be as competent to execute the bonds of the corporation as the supervisors. They are the lawful agents of the people for this special purpose, and though nominated by the legislature, they cannot act without the assent of the citizens of the county, ascertained in the manner directed by law; and, having so acted, the county cannot now repudiate their acts.

JUDGMENT AFFIRMED, WITH COSTS.

* State *v.* Kennon, 7 Ohio, 562.