ADOLPHUS A. ELLIS, ATTORNEY GENERAL, v. WILLIAM H. LENNON.

*Quo warranto—Municipal officer—Qualification—Term of office.*

1. The incumbent of a municipal office created by statute, who is elected or appointed in the manner therein prescribed, for a definite term fixed by the statute, and who exercises functions derived therefrom, in addition to those derived from the by-laws of the municipality, must be deemed a public officer within the meaning of How. Stat. § 8635, authorizing proceedings by *quo warranto* against any person who shall usurp, intrude into, or unlawfully hold or exercise any public office, etc.

2. An alderman, who is *ex officio* a member of the common council, cannot, by resigning his office prior to the expiration of the term for which he was elected, render himself eligible to receive the appointment of chief of police, whose salary is paid from the city treasury, where the charter of the city provides that no alderman shall be elected or appointed to any other office in the city during the term for which he was elected, and that no member of the common council shall, during the like period, be appointed to or be competent to hold any office of which the emoluments are paid from the city treasury.

Information in the nature of a *quo warranto* to test the title of respondent to the office of chief of police of West Bay City. Argued June 18, 1891. Judgment of ouster entered July 3, 1891. The facts are stated in the opinion.

*C. E. Pierce,* for relator.

*S. P. Flynn (T. A. E. Weadock,* of counsel), for respondent.

McGRATH, J. Respondent was elected alderman of West Bay City for the term of two years from and after April 10, 1890. He entered upon the duties of said

office, and served till April 13, 1891, when he resigned, and was by the common council appointed chief of police of that city, which office he now holds. The Attorney General has filed an information in the nature of a *quo warranto,* - claiming that respondent's appointment was illegal.

Section 15, tit. 3, Charter, provides that—

"The common council shall also appoint, on the second Monday in April, A. D. 1891, * * * one chief of police, and such number of policemen with pay * * * as they shall deem necessary, and shall fix and limit the term of office of the persons so appointed, in accordance with the provisions of this act."

Section 18 of title 5 provides:

"The police force of the city shall consist of a chief of police, and such number of policemen with pay, and such number of policemen and watchmen without pay, as the common council shall appoint, as in this act provided. Each member of the police force appointed by the common council shall, before entering upon the duties of his office, take and subscribe the oath prescribed by the Constitution of this State, and file the same with the recorder. After filing such official oath, the chief of police and each policeman so appointed shall hold his office during good behavior, except as herein otherwise provided."

Section 19, tit. 5, provides that the—

"Police committee shall have power to try and determine all complaints against any member of the police force, and upon conviction of any member of the police force by a vote of a majority of the members of such committee of incompetency, misbehavior, insubordination, neglect of duty, or violation of any of the rules or regulations made by the common council for the government of the police department, such member shall be suspended from duty, and shall be reported by such committee to the common council, together with a report of his conviction; * * * and if by a majority of the members elect of said common council such conviction be confirmed, such person shall be removed from office, and

the vacancy thus made may be filled by the common council forthwith; in case such conviction is not confirmed as aforesaid, such person shall be reinstated.  * * * The common council shall have power at any time to diminish the number of policemen and police officers employed by the city, by dismissing and removing any member of the police force, but no member of the police force shall be removed, except as hereinbefore provided, unless two-thirds of the members elect of the common council shall first vote in favor of such decrease in the number of policemen or officers."

At a regular meeting of the common council held April 13, 1891, 12 aldermen, including the respondent, were present. A resolution was adopted providing "that this council now proceed to appoint the city officers in the order hereinafter set forth: Chief of fire department, chief of police," etc.; and the respondent voted in favor of its adoption. At the same meeting two ballots were taken for chief of police. On the first ballot respondent received 6 votes, and one Dunnigan received 5, and on the second ballot respondent received 7 votes, and Dunnigan 4; whereupon respondent was declared elected. But the respondent did not vote upon either of these ballots. A resolution was then offered "that William Dunnigan be, and, is hereby, appointed chief of police;" but said resolution did not prevail, there being 4 yea and 8 nay votes. The respondent, Lennon, voted against the adoption of said resolution. Immediately thereafter the respondent tendered his resignation of the office of alderman, and the same was accepted by the council.

At a meeting of the council held April 20, 1891, at which there were present 11 aldermen, a resolution was offered appointing respondent to the office of chief of police. The resolution was adopted by a vote of 7 to 4. Respondent claims to hold his office by virtue of said appointment.

Two questions are raised:

1. Is the office of chief of police under this charter one which is properly the subject of this proceeding?

The statute provides that an information in the nature of a *quo warranto* may be filed—

"When any person shall usurp, intrude into, or unlawfully hold or exercise any public office, civil or military, or any franchise within this State, or any office in any corporation created by the authority of this State." How. Stat. § 8635.

The incumbent of a municipal office created by the statute, who is elected or appointed in the manner thereby prescribed, having a definite term fixed by statute, and who exercises functions which are derived from the charter in addition to those derived from the by-laws of the municipality, must be deemed a public officer, within the meaning of this statute. Such an officer is a constituent part of the machinery of government, exercising functions prescribed by sovereign authority, and which are independent of local control.

The chief of police of West Bay City is a public officer. The office is created by statute, and his powers and duties are prescribed by the charter, which provides that he—

"Shall have power to serve any summons, subpœna, warrant, order, notice, paper, or process whatever, issued or directed by any justice of the peace, or officer whatever, in the execution of the laws of the State or ordinances of the city for the prevention of crime and punishment of offenders in any part of the State, * * * to serve process for any violation of the city ordinances, and generally shall have and exercise the powers as conservator of the peace which township constables under the general laws of the State possess."

He is required by charter, before entering upon the duties of his office, to take and subscribe the oath prescribed by the Constitution of this State, and to file the same with the recorder. He holds his office during good

behavior, except that he may be removed upon complaint and conviction of incompetency, misbehavior, insubordination, neglect of duty, or violation of any of the rules or regulations made by the common council for the government of the police department. The power given to diminish the number of policemen cannot be construed to confer the power of a summary dismissal of the chief of police.

The case is clearly distinguishable from that of *Attorney General v. Cain*, 84 Mich. 223. In that case the charter provided that the council might, by ordinance, provide for a police force, make rules and regulations for its government, and prescribe the powers and duties of policemen, and empowered the council to remove any policeman at any time. The office held by respondent is therefore within the statute.

2. Was the respondent eligible at the time of his appointment?

The office was created while respondent was an alderman and a member of the council. Before his resignation the council resolved to appoint a chief of police, and respondent voted in favor of such action. Thereupon two ballots were had, and respondent was declared elected. A resolution was offered appointing another to the office, and respondent voted against its adoption. Respondent then tendered his resignation, and at a subsequent meeting, nearly a year before the period for which he had been elected as alderman had expired, he was by resolution appointed chief of police.

The charter provides not only that "no alderman shall be elected or appointed to any other office in the city during the term for which he was elected as alderman," but it contains the further provision that "no member of the common council shall, during the period for which he was elected, be appointed to or be competent to hold

any office of which the emoluments are paid from the city treasury." The mayor and aldermen constitute the common council, and the salary of the chief of police is paid from the city treasury.

The respondent contends that when appointed he had ceased to be an alderman or member of the council; that his "term of office" had therefore expired, and he was no longer ineligible; in other words, that the prohibition is limited to *members* of the council, or *aldermen.* This is a narrow view of the statute, and gives to language used no purpose. Similar provisions exist in nearly all municipal charters. The general law for the incorporation of cities contains the following provision:

"No alderman shall be elected or appointed to any other office in the city during the term for which he was elected as alderman, nor appointed to any other office in the city within one year thereafter."[1]

The Constitution provides that—

"No person elected a member of the Legislature shall receive any civil appointment within this State, or to the Senate of the United States, from the Governor, the Governor and Senate, from the Legislature, or any other State authority, during the term for which he is elected."[2]

The purpose of these statutes is to prevent officers from using their official positions in the creation of offices for themselves, or for the appointment of themselves to place. While the law concedes the right of resignation, it is its policy to take away all inducements to the vacation of office. Statutes should be so construed as to give every word and phrase used its common and approved meaning. If it was the intention of the Legislature to limit the prohibition to the term of actual service, or simply to make members of the coun-

[1] How. Stat. § 2472.
[2] Art. 4, § 18.

cil or aldermen ineligible to other city offices during the term of actual service, the phrases, "during the term for which he was elected," and "during the period for which he was elected," are entirely superfluous. The term for which respondent was elected is clearly defined by the charter, and the language, "the term for which he was elected," has a clear and well-defined meaning. He was elected to serve for two years, whether he served that time or not. The language used in the statute fixes the period of his ineligibility, and excludes a construction which would have attached in the absence of that language.

It follows that at the time of his appointment respondent was ineligible, and now holds the office of chief of police of West Bay City without authority, and is guilty of intrusion, and a judgment of ouster, with costs, must therefore be rendered against him.

The other Justices concurred.