LAND, J.
The four defendants have appealed from a sentence for cattle stealing.
Defendants moved to quash the tales jury list drawn by the jury commission on the ground that there was a vacancy in said body, caused by the election of one of its members, J. W. Tooke, to the State Constitutional Convention of 1913, and his qualification and service as a member of said convention, and that the said Tooke, an outsider, unlawfully participated in said drawing. The judge below overruled the motion to quash, and the defendants thereupon took a bill of exceptions to the ruling.
[1] The judge a quo was of the opinion that a member of a constitutional convention is in no proper sense an officer, that such a position is fleeting and casual, and the member does not exercise his functions continuously and as a part of the regular and permanent administration of the government. The judge cited Sheboygan v. Parker, 3 Wall. 93, 18 L. Ed. 33.
The judge was also of the opinion that the motion came too late, because when filed there were then 8 jurors in the box, accepted and sworn, drawn by the same commission within the preceding days. The judge cited section 16, Act No. 135 of 1898; State v. Starr, 52 La. Ann. 610, 26 South. 998.
The additional ground that Tooke was interested in the case is not supported by any evidence.
The first ruling is supported by the historical fact that state officials, high and low, have been delegates to constitutional conventions, without a suggestion from any quarter, that they had, thereby, vacated their respective offices.
Act No. 13 of 1912, to enforce the prohibition of article 170 of the Constitution against dual office holding, does not mention delegates to constitutional conventions in the enumeration of the different offices within the purview of said statute.
It has been held that this' article does not apply to municipal officers, but exclusively to state officers. State v. Phenix, 134 La. 329, 64 South. 129. Conventions are not mentioned in our Constitution, and its provisions have no reference or relation to delegates of the people elected for the purpose of framing organic laws for the body politic.
Such delegates are agents of the people, chosen to represent their constituents for a particular public purpose. They have never been styled officers, and hold no office in the sense of the Constitution. A constitutional convention is not a co-ordinate branch of the government. It exercises no governmental power, but is a body raised by law, in aid of the popular desire to discuss and propose amendments, which have no governing force as long as they remain propositions. See 6 R. C. L. 18.
*353 [2] In the motion for a new trial, it was alleged that after the trial of the case, the defendants had discovered that John Perkins, a material eyewitness for the state, had committed perjury in his testimony before the jury. John Perkins signed with his mark an affidavit before a deputy clerk, stating that the whole of his evidence given before the petit jury was false and untrue; and that he was compelled to so testify by two certain state witnesses, Eb.\ Perkins and Hollis Buxton, who threatened his life in case he failed or refused to testify as instructed by them.
John Perkins subsequently testified before the judge, that he had not told the truth on the trial of the case; that he was afraid he would get killed if he told the truth; that he was threatened by Eb. Perkins and Hollis Buxton; that he was told by them what to swear to; that he never saw the defendants kill and butcher a cow at any time; that he first , told his mother that he had not told the truth. On cross-examination the witness stated that he did not remember touching the pen or marking his mark to the affidavit, but that its contents were true.
The state tendered the testimony of 6 witnesses to rebut the “allegations” of the affidavit. The defendants tendered the affidavit of 6 jurors to the effect that they would not have found the defendants guilty, if they had known that John Perkins had perjured himself.
The judge overruled the motion for a new trial for reasons assigned in the bill. In the per curiam, the judge stated the substance of all the testimony submitted to the jury, and his statement shows that Hollis Buxton and Eb. Perkins, and John Perkins, the last named a boy apparently of the age of 12 or 14 years, all testified positively that they saw the defendants butchering the cow in question at a certain place, and at a certain hour of the day; that Hollis and Eb. reported the crime the next day to two persons, one of them a deputy sheriff; and that they were not successfully impeached on the trial of the case. The same statement shows' that another witness went to the place where the cow was killed, and found a part of the remains, and the hide or portions thereof cut into strips; and that another witness, to whom the defendants were all well known, about dark of the day of the commission of the crime, saw four men, each with a filled sack on his shoulder, passing in front of the witness’ house, and that he then and there recognized among them two of the defendants.
The statement further shows that the defense on the part of each of the defendants was an alibi, supported by his testimony, and that of two or thr.ee witnesses, most of whom were connections or relations; and that three of the defendants had previously pleaded guilty to killing sheep with intent to steal.
The testimony and affidavit of Perkins on the trial of the motion for a new trial was not supported as far as the record shows by other evidence.
The judge, after stating the evidence adduced before the jury, concluded as follows:
“This court is of -opinion that John Perkins’ evidence for all purposes is utterly worthless; that is to say, human faith cannot be reasonably attached to it.”
We are not prepared to say that the judge abused his discretion in overruling the motion for a new trial. On the contrary, the testimony of Perkins on the trial was a set-off to his testimony on the motion for a new trial, and his confession of perjury destroyed his credibility. '
In a similar case, the Supreme Court of Florida said:
“One of the rules for the granting of new trials on the ground of newly discovered evidence is that the alleged newly discovered evidence must be such as would probably produce a different result on the second trial. The *355 statements of this witness, as contained in her affidavit quoted above, when held up in juxtaposition to her evidence on the same subject-matter at the trial, would not be likely to impress the jury at another trial with much credence in her veracity, and would not therefore, with any degree of probability, produce a different result.”
See Winsley v. State (Fla.) 68 So. 376, 377.
The court in that case cited People ex rel. Stemmler v. McGuire, 2 Hun (N. Y.) 269, to the same effect.
Judgment affirmed.