## ROBERT HARVEY *v.* LYDA T. RIDGEWAY

5-5223                                        450 S. W. 2d 281

### Opinion delivered February 9, 1970

[Rehearing denied March 16, 1970.]

*Lightle & Tedder,* for appellant.

*Kaneaster Hodges, Jr.,* for appellee.

J. FRED JONES, Justice. The appellant, the Honorable Robert Harvey, is the duly elected state Senator for the Seventeenth Senatorial District of Arkansas, having been elected to that office in 1966 for a four year term. In 1968, and during the term for which he was elected to the Senate, Senator Harvey was also elected to serve as a delegate to the Constitutional Convention for the State of Arkansas. He was seated as a delegate by a unanimous vote of the Convention on May 27, 1969.

This taxpayer's suit was brought by the appellee pursuant to Art. 16, § 13 of the Arkansas Constitution, which permits taxpayer's suits to prevent illegal exactions. The appellee alleges that under Art. 5, § 10 of the Arkansas Constitution Senator Harvey is ineligible to serve as delegate to the Constitutional Convention and the appellee seeks to enjoin Senator Harvey from holding both offices.

Upon the foregoing facts, as stipulated, the chancellor found Senator Harvey ineligible to hold the office of state Senator and at the same time serve as a delegate to the Constitutional Convention. Senator Harvey has appealed and designates the points upon which he relies as follows:

"The trial court was without jurisdiction to hear and make a determination in this case.

The term 'civil office under this state' as used in Article 5, section 10 of the Arkansas Constitution does not include a delegate to the Constitutional Convention.

A Constitutional Convention and the election of delegates thereto are not governed by the provisions of the existing Constitution.

The order of the court is so ambiguous as to fail to apprise the appellant of what course of action

can be taken without subjecting appellant to a citation for contempt.

Under any view taken, Senator Harvey is qualified and eligible to serve as a delegate to the Arkansas Constitutional Convention and at the same time to serve as a state Senator."

This matter having reached this court a few days before the Constitutional Convention was to enter upon its final thirty day session, we entered a per curiam opinion of January 10, 1970, reversing the chancellor and holding that Senator Harvey is eligible to serve as delegate to the Convention. We now set out our reasons for so holding.

As a delegate to the Convention Senator Harvey would be entitled to receive per diem and travel expenses as provided in Act 42 of the first extraordinary session of the legislature for 1968, and the courts do have jurisdiction to determine the issues raised by this case. We so held in *Starnes* v. *Sadler*, 237 Ark. 325, 372 S. W. 2d 585. See also *Wells* v. *Bain*, 75 Penn. Reports 39, where the Supreme Court of Pennsylvania, in dealing with a similar problem, said:

"The convention is not a co-ordinate branch of the government. It exercises no governmental power, but is a body raised by law, in aid of the popular desire to discuss and propose amendments, which have no governing force so long as they remain propositions. While it acts within the scope of its delegated powers, it is not amenable for its acts, but when it assumes to legislate, to repeal and displace existing institutions before they are displaced by the adoption of its propositions, it acts without authority, and the citizens injured thereby are entitled, under the declaration of rights, to an open court and to redress at our hands."

We now come to the real issue of whether a member of the Arkansas State Legislature can legally serve

as a delegate to a constitutional convention under Art. 5, § 10 of the present Constitution, which reads as follows:

> "No Senator or Representative shall, during the term for which he shall have been elected, be appointed or elected to any civil office under this State."

There is no question that Robert Harvey is a Senator and there is no question that he had been elected a delegate to the Constitutional Convention during the term for which he was elected Senator; so the actual question, is whether the position of delegate to the Constitutional Convention is a "civil office under this State," within the meaning and prohibition as contemplated by the Constitution.

Legal precedent does not furnish a sound and clear answer to the precise question presented here, because there have been relatively few constitutional conventions, and therefore, few legal precedents concerning the qualifications of delegates to constitutional conventions. Both J. A. Jameson and R. S. Hoar in their respective books on Constitutional Conventions, point out that conventions for the purpose of drafting constitutions, are American institutions of recent origin. Jameson and Hoar differ as to the official status of a delegate to a constitutional convention. A provision of the Illinois Constitution provided that judges of certain courts should not be eligible to any other office, or public trust, of profit, during the term for which they were elected or for one year thereafter. A delegate to the Illinois Constitutional Convention had been a judge of a court within one year prior to his election to the Convention and his competitor contested his election on this ground. The judge contended that the words of the Constitution referred to the distribution of powers by the Constitution to the three regular branches of government, and that the Convention belonged to neither branch.

The difference of opinion between Jameson and

Hoar is only important here in illustrating the two opposing philosophies leading to opposite conclusions as stated by Hoar on pages 185-186 of his book, as follows:

> "In behalf of the contestant, no great claim was made that a seat in the convention was a public office, but it was contended very strongly that it was certainly a position of public trust of the greatest magnitude. The convention, however, decided to permit the judge to retain his seat. Jameson differs with this conclusion in the following language:

> 'In my judgment, there can be but little doubt, that a member of a Convention is, in the enlarged and proper acceptation of the term, an 'officer' of the State. . . . A Convention is a part of the apparatus by which a sovereign society does its work as a political organism. It is the sovereign, as organized for the purpose of renewing or repairing the governmental machinery. That same sovereign, as organized for the purpose of making laws, is the legislature; as organized for the purpose of applying or carrying into effect the laws, it is the judiciary or the executive. These successive forms into which the sovereign resolves itself, are but systems of organization having relation more or less directly to the government of the society. Together, they constitute the government.' "

Hoar then continues:

> "The position of delegate to the Illinois convention was undoubtedly a position of public trust, and even a public office; but was not, if we regard such conventions as extraconstitutional, a position under the constitution. When a constitution refers to the incompatibility of offices, such provisions should be construed as relating solely to positions under the constitution itself and not to apply to any other positions unless clearly so stated."

Hoar then continues, quoting from the Attorney General of the State of Illinois, as follows:

"Whatever may be said in relation to a member of the Legislature, he at least takes part in the execution of one of the powers of government, whereas a delegate in the convention acts substantially as one of a committee of the people, whose power is restricted to making a report to the people.

The whole purpose of the convention is to take under consideration the propriety of revising or altering the present Constitution, and to report back to the people such revision, alteration or amendment as it may propose. Its powers are similar to that of a committee, its work is entirely preliminary, and it has no power to do any act which of itself has any final effect.

It is my view that the word 'office,' as used in article VIII of the Amendments, refers to a position the incumbent of which exercises some power of government, and not to the position of a person selected to act in an advisory capacity in framing a scheme or change of government to be submitted to the people for adoption or rejection."

In the Nebraska case of *Baker* v. *Moorhead,* 174 N. W. 430, a legislative act provided for the election of delegates to a constitutional convention at a *special election.* The Constitution provided that all *officers* (except certain ones named) should be elected at the *general election.* In holding the act constitutional, the Supreme Court said:

"We are also of opinion that members of the constitutional convention are not officers intended to be embraced in the provisions of section 13, supra. They are not constitutional officers in a strict sense; they are officers who create a Constitution, rather than officers who are created by the Constitution. Section 13, read in connection with section 14,

which has to do with terms of office, would indicate that those provisions have to do only with officers elected who have fixed terms of office, and should be elected at an election called with reference to the time of the beginning of their terms. The members of the convention have no fixed term of office, and by the Constitution itself the convention may be called at any time within three months after the election of its members."

In 1915 the Constitution of Louisiana contained a provision as follows: "No person shall hold or exercise at the same time, more than one office of trust or profit, except that of justice of the peace, or notary public." In the case of *State* v. *Doyle,* 70 So. 322, four defendants were convicted of stealing cattle and on appeal they contended that the trial court erred in overruling their motion to quash the jury panel because one of the jury commissioners, who helped select the panel, was a member of the state Constitutional Convention of 1913, and therefore an "outsider" in helping to draw the talesman jury list. In sustaining the trial court, the Louisiana Supreme Court said:

"The judge a quo was of the opinion that a member of a constitutional convention is in no proper sense an officer, that such a position is fleeting and casual, and the member does not exercise his functions continuously and as a part of the regular and permanent administration of the government. The judge cited *Sheboygan* v. *Parker,* 3 Wall. 93, 18 L. Ed. 33.

\* \* \*

The first ruling is supported by the historical fact that state officials, high and low, have been delegates to constitutional conventions, without a suggestion from any quarter, that they had, thereby, vacated their respective offices.

Act No. 13 of 1912, to enforce the prohibition of

article 170 of the Constitution against dual office holding, does not mention delegates to constitutional conventions in the enumeration of the different offices within the purview of said statute.

It has been held that this article does not apply to municipal officers, but exclusively to state officers. *State* v. *Phenix,* 134 La. 329, 64 South. 129. Conventions are not mentioned in our Constitution, and its provisions have no reference or relation to delegates of the people elected for the purpose of framing organic laws for the body politic.

Such delegates are agents of the people, chosen to represent their constituents for a particular public purpose. They have never been styled officers, and hold no office in the sense of the Constitution. A constitutional convention is not a co-ordinate branch of the government. It exercises no governmental power, but is a body raised by law, in aid of the popular desire to discuss and propose amendments, which have no governing force as long as they remain propositions. See 6 R.C.L. 18."

In the Oklahoma case of *Frantz* v. *Autry,* 91 P. 193, an action was instituted to enjoin the governor and president of the Constitutional Convention from issuing and publishing a proclamation submitting certain items to the electorate in a proposed constitution for Oklahoma. In that case the Oklahoma Supreme Court set out the contention and its decision as follows:

"It was contended by the plaintiff in the court below, defendant in error here, that the power and authority of the constitutional convention is derived solely from the powers granted in the enabling act, and that every power granted to the convention must be found and expressed therein, except such implied powers as may be necessary to carry into effect the express grant of power; that the power granted by the enabling act embraces no legislative grant, but confers only the power of a committee to

adopt and propose fundamental propositions which upon ratification may become the fundamental law of the state. And this was the view of the trial court, and it is earnestly urged in this court by counsel for defendant in error as the true doctrine. In our opinion, this contention is clearly untenable, and cannot be sustained by the authorities. In a territory, the source of all power is Congress. But in the formation of a Constitution and state government the power emanates from the people. The delegates to the convention were not the agents or representatives of Congress, but they were the immediate agents and representatives of the people of the two territories. They derived their power and authority from the people in their sovereign capacity. And this is in harmony with the principles of the Declaration of Independence, which declares that 'governments are instituted among men, deriving their just powers from the consent of the governed,' and is in keeping with the doctrine announced by Lincoln when he uttered the immortal words, that this is 'a government of the people, by the people, and for the people.'".

The Kentucky case of *Chenault* v. *Carter*, 332 S. W. 2d 623, had to do with the calling of a special election to take the sense of the people of Kentucky on the question of holding a constitutional convention, and although that case did not involve the qualifications of delegates to the convention, the court said:

"The choice of whether a constitutional convention shall be called rests entirely with the electorate. The discretion of the legislature is at an end when the matter is finally proposed. The formal call issued by the General Assembly following a favorable vote by the people is but a ministerial duty enjoined upon it by the Constitution in the execution of a public mandate. Inhering in that mandate are the terms and conditions of the initial proposal. The delegates to the convention are the agents not of the legislature, but of the people themselves.

As a principal may limit the authority of his agent, so may the sovereign people of this state limit the authority of their delegates. This they may do by accepting and approving, through a constitutional majority as set forth in § 258, a proposal for a limited constitutional convention. *Gaines* v. *O'Connell*, 305 Ky. 397, 204 S. W. 2d 425; *Staples* v. *Gilmer*, 183 Va. 613, 33 S. E. 2d 49, 158 A. L. R. 495; *Cummings* v. *Beeler*, 189 Tenn. 151, 223 S. W. 2d 913."

In *Board of Supervisors of Elections* v. *Attorney General*, 246 Md. 417, 229 A. 2d 388, a declaratory judgment action was instituted for a determination of the correct answer to whether a delegate to a proposed constitutional convention would be a holder of office within the meaning of declaration of rights provisions, and certain other sections, of the Constitution of Maryland then in force. The circuit court held that such delegate would not be the holder of an office within the Constitutional provisions and in affirming the circuit court on appeal, the Supreme Court said:

"Article 33 of the Declaration of Rights states that no judge shall hold any other office, 'civil or military, or political trust, or employment of any kind, whatsoever, *under the Constitution or Laws of this State* * * *.' Article 35 follows to provide that 'no person shall hold, at the same time, more than one office of profit, *created by the Constitution or Laws of this State* * * *.' Section 6 of Art. 1 of the Constitution recites that '[e]very person elected, or appointed, to any office of profit or trust, *under this Constitution, or under the Laws, made pursuant thereto,*' shall take a prescribed oath of office under which he swears that he will not receive the profits 'of any other office' during the term of his acting in the office for which he is qualifying. Section 11 of Art. III declares ineligible as a senator or a delegate all ministers and all other persons holding 'any civil office or profit, or trust, *under this State*' (except justices of the peace). Section 17 of Art. III

prohibits a member of the General Assembly during the term for which he was elected, from serving in 'any office, which shall have been created, or the salary, or profits of which shall have been increased, during such term.'

\*     \*     \*

The people of Maryland from 1776 until today have shown that they concur in the generally prevailing view, which we believe to be sound, that the people retain the sovereign power to rewrite their constitution, that the legislative processes which lead. to and assist in the exercise of that power are not a part of the previously bindingly delegated powers conferred on the Legislature by the people, that those who are selected to sit in convention and do the rewriting of the Constitution are selected directly by the people and therefore are the direct agents of the people, rather than agents of the organized government, which is the State. The people also have shown that in their opinion, which we share, the offices which are rationed by the constitution one to a customer or the office which may not be held by one who helped create the office are offices which are established by the Constitution or by a law which implements or aids the execution of executive, legislative or judicial functions created by the Constitution, and that an agent of the people who helps create a new constitution does not hold an office within that category. These prior views and actions of the people are entitled to great respect and have aided us greatly in reaching the conclusion that a delegate is not a constitutional officer.

\*     \*     \*

. . . The idea of continuity contemplated by the ordinary test for an office is lacking in the case of a. delegate to a convention.

Most importantly, a delegate does not exercise any part of the sovereign power of the State—that is, any part of the sovereignty delegated by the people through their constitution to the executive, legislative or judicial branches of the government, even though, we may assume, he does exercise some part of the sovereign power retained by the people and by them committed to him to help create a new constitution."

Returning now to the case at bar, we do not consider Senator Harvey's qualifications to serve as state Senator as being an issue in this case. We are of the opinion that when Senator Harvey was elected as a delegate to the Constitutional Convention, he was not appointed or elected to any civil office under this State, within the meaning and prohibition of Art. 5, § 10, supra. We are of the opinion that the phrase "any civil office under this State" refers to an office created by civil law within one of the only three branches of government provided for under the present Constitution of this state.

The people of Arkansas saw fit to set up and limit the powers of government to three separate departments, but they did not see fit to trust either department with the power to change the Constitution. Article 4, § 1 of the Constitution provides:

"The powers of the government of the State of Arkansas shall be divided into three distinct departments, each of them to be confided to a separate body of magistracy, to wit: Those which are legislative to one, those which are executive to another, and those which are judicial to another."

Unlike the constitutions of some of the states, the present Constitution of Arkansas does not provide a method for obtaining a new constitution, and we may reasonably assume that the people intended it that way. Article 2, § 1 of the Constitution explains why the Constitution is silent as to the method of changing it,

and it does so in majestic words of tremendous import and meaning, as follows:

"All political power is inherent in the people and government is instituted for their protection, security and benefit; and they have the right to alter, reform or abolish the same in such manner as they may think proper."

We are unable to conceive of any person being appointed or elected to "any civil office under this State" unless such civil office would be under one of the three divisions of the powers of the government of the State of Arkansas as specifically divided and limited in Art. 4, § 1, supra. We are of the opinion that Senator Harvey's position as delegate to the Constitutional Convention is not derived from the Constitution at all. It is derived directly from that power "inherent in the people" as simply announced in Art. 2, § 1, of the state Constitution, supra, and in the manner the people thought proper as expressed in Act 42 of the Acts of the General Assembly for 1969. This act did not create a "civil office under this State," as referred to in Art. 5, § 10. Act 42 was simply "an Act setting up the procedure to be followed in calling a Constitutional Convention. . ." and was so stated in its preamble by the legislature.

Delegate is defined in Black's Law Dictionary as:

"A person who is delegated or commissioned to act in the stead of another; a person to whom affairs are committed by another; an attorney.

A person elected or appointed to be a member of a representative assembly. Usually spoken of one sent to a special or occasional assembly or convention."

We are of the view that the appellant has not been appointed or elected to a civil office under this State (other than that of state Senator). He has been selected as a delegate, or agent, of the people of his district for

the purpose of acting in their stead in the exercise of their inherent power in working out the substance, form and content of a constitution to be submitted to all the people of Arkansas for their approval or rejection.

It is obvious that Art. 5, § 10 of the present Constitution was designed and intended as a protection against the possible conflicts in interests a member of the legislature might have as an elected official with the power, influence and authority to create positions and offices, and the interest he might have as a private citizen who would desire to hold such civil office by appointment or election.

The people impose considerable confidence in their legislative Representatives and Senators. Legislators bear the full responsibility of enacting laws in the carrying out of the functions of the legislative branch of the government as delegated by the people under the Constitution. Representatives and Senators cannot delegate their legislative powers and duties—they cannot even refer a legislative act to a vote of the people. That power is reserved by the people in the form of referendum. The legislature is, of course, given the full authority to repeal any law it is authorized to enact, but the people of Arkansas risk their constitutional changes in the hands of no one. They have retained their inherent power when it comes to changing their constitution, and have reserved the right and power to make such changes in such manner as they think proper. The people of Arkansas have thought it proper to call a Constitutional Convention composed of delegates they have selected to represent them in preparing such constitutional changes as they, the people, may desire to consider. Even if the position of delegate to a Constitutional Convention were a "civil office under this State," we are unable to see where such conflict could arise between a member of the legislature and a delegate to a constitutional convention, as Art. 5, § 10 is designed to prevent.

We conclude that a delegate to a constitutional con-

vention is not a "civil office under this State" within the meaning and prohibition expressed in Art. 5, § 10 of the Constitution of 1874, and we so hold. The judgment of the trial court is reversed and this cause dismissed.

HARRIS, C. J., GEORGE ROSE SMITH, J., and WOOTTON, S. J., dissent.

FOGLEMAN, J., disqualified and not participating.

RICHARD H. WOOTTON, Special Justice, dissenting. I cannot agree with the majority opinion's conclusion that a delegate to the Constitutional Convention is not a "civil office under this State" within the meaning and prohibition expressed in Article 5, Section 10, of the Constitution of 1874. To the contrary, I believe the better reasoning is that a Constitutional Convention delegate elected pursuant to Act 42 holds a civil office under this State within the Constitutional prohibition.

The Arkansas Constitution makes no specific reference to constitutional conventions. However, even in the absence of such a reference it is generally recognized and accepted that the legislature has the power to call a Constitutional Convention. 16 Am. Jur. 2d, Const. Law, Section 30. That right not being denied to the General Assembly by the Arkansas Constitution of 1874, it must be held to exist. *Webb* v. *State,* 176 Ark. 722, 3 S. W. 2d 1000.

Both the legislature and the convention must act under the Constitution of 1874. The legislature cannot create a body with powers or authority beyond the Constitution; it cannot create a super-body with powers or rights beyond the very Constitution that created those powers and rights. A Constitutional Convention, once assembled, may propose for popular approval any form of Constitution it may desire, subject only to superior law such as the United States Constitution. The form and mechanics of arriving at the end result, however, are procedural matters that must be conducted within

the framework of our present Constitution. To hold otherwise would be to permit the legislature to amend the present Constitution. That it cannot do. The legislature in passing Acts 3 and 42, and the electorate in approving the call for a Constitutional Convention and choosing delegates thereto, did not purport to and did not in fact amend the Constitution of 1874.

Act 42 was unquestionably enacted pursuant to the authority granted by the Constitution of 1874. For instance, it had to have an enacting clause and had to be approved by a majority of each house, all as required by Constitutional mandate. It clearly was an act of the State. Being creatures of the State and of the Constitution of 1874, Acts 3 and 42, and the Constitutional Convention called thereunder, could not rise higher than the Constitution of 1874 nor possess authority beyond its provisions. Hence Article 5, Section 10, with its prohibition against legislators' being appointed or elected to any civil office under the State, was part of the overlying Constitutional blanket. If, therefore, a Constitutional delegate holds a civil office, a member of the General Assembly is ineligible to serve as a delegate.

A Constitutional delegate must be either an officer or an employee. An employee holds his position by reason of a contractual relationship. A public officer exercises some of the State's sovereign power, has statutory duties rather than contractual ones, and receives his position by appointment or election. The concept includes such ideas as a definite term, payment for services, and important duties. See *Maddox* v. *State,* 220 Ark. 762, 249 S. W. 2d 972; *Lucas* v. *Futrall,* 84 Ark. 540, 106 S. W. 667; and *Vincenheller* v. *Reagan,* 69 Ark. 460, 64 S. W. 278.

Clearly a delegate to the Constitutional Convention is not an employee. On the contrary, he is elected, has a definite term (even though relatively short), must perform the statutory duties provided by an act, and is exercising some of the State's sovereign power in help-

ing to draft a Constitution to affect all the citizens of Arkansas. The General Assembly chose its language carefully and correctly in Section 2 of Act 42 when it referred to "the office" of delegate to the Constitutional Convention.

In a substantially similar case, the Supreme Court of Michigan held that a legislator was not eligible to serve as a delegate to a Constitutional Convention. *Fyfe.* v. *Mosher,* 149 Mich. 349, 112 N. W. 725. Said the court:

> "If the framers of the Constitution meant to exclude members of the Legislature from eligibility to other state offices, no language could be more comprehensive than that of 'any other state authority.' These are state officers elected by state authority. They receive a civil appointment from state authority. There are other provisions of the Constitution which show the intention to prevent members of the Legislature from holding other civil positions during their term of office. Section 6, art. 4, provides: 'No person holding any office under the United States (or this state) or any county office except notaries public, officers of the militia and officers elected by townships, shall be eligible to or have a seat in either house of the Legislature, and all votes given for any such person shall be void.' The purpose of these provisions is 'to preserve a pure public policy,' or as we said in *Ellis* v. *Lennon,* 86 Mich. 468, 49 N. W. 308, speaking through Justice McGrath, 'to prevent officers from using their official position in the creation of offices for themselves or for the appointment of themselves to place.'

> "We are all of the opinion that delegates to the constitutional convention came within the term 'civil appointment' as used in this provision of the Constitution, that they receive their appointment from state authority, and therefore that members of the Legislature which enacted the law and thus

provided for the offices, fixing compensation, etc., are ineligible as delegates. They are both within the spirit and letter of the law."

I cannot agree with the contrary view taken in *Board of Supervisors of Elections* v. *Attorney General*, 246 Md. 417, 229 A. 2d 388, and similar cases cited in the majority opinion.

The purpose of Article 5, Section 10, is, of course, to prevent any conflict between the legislator's public duty and his personal interest. This opinion should not be read to imply in the slightest degree that the Appellant would place his own interest above that of the public; but that possibility would exist, now and in the future, if legislators were permitted to serve as delegates. Our Constitution seeks to prevent that possibility, and it is the duty of the Court to uphold the Constitution.

I would agree with the majority opinion's conclusion that this Court does have jurisdiction to determine the issues raised by this case.

For the reasons cited above, I would enjoin the Appellant from serving as a delegate to the Arkansas Constitutional Convention.

HARRIS, C. J. and GEORGE ROSE SMITH, J., join in this dissent.