345 So.2d 452 (1977)
STATE of Louisiana
v.
Victor Hubert LINKLETTER and Kathleen McKenzie.
Nos. 58596 and 58893.
Supreme Court of Louisiana.
April 11, 1977.
Rehearings Denied May 13, 1977.
*454 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Knowles M. Tucker, Dist. Atty., Dracos D. Burke, Asst. Dist. Atty., for plaintiff-appellee.
Owen J. Trahant, Jr., Jefferson, for defendants-appellants.
SUMMERS, Justice.
Defendant Linkletter was charged by bill of information with the September 7, 1975 simple burglary of the City Pharmacy in Jeanerette, Louisiana, in violation of Article 62 of the Criminal Code. After trial the jury returned a verdict of guilty. Linkletter was then charged as a multiple offender, found guilty and sentenced to serve 18 years at hard labor. He appeals, assigning five errors to rulings of the trial judge.

Assignment 1
Defendant filed a motion for a bill of particulars in which he asked if the State had in its possession any "Brady v. Maryland" evidence material to the issues of the case which might be favorable to the defense. The defense motion also requested authority to inspect and copy all such evidence in the possession of the State. The State answered that it was unaware of any evidence within the purview of Brady v. Maryland.
At a hearing on February 2, 1976 to determine the sufficiency of the State's answers, defendant requested that the trial judge make an in-camera inspection of the State's file. When the request was denied by the trial judge, defense counsel objected and assigned the ruling as error.
On a number of occasions this Court has made clear that the decision in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), while requiring the prosecution to inform the defendant of exculpatory evidence, does not require the State to open its files to the defendant to search and decide what is exculpatory. State v. Nix, 327 So.2d 301 (La.1976), cert. denied, Fulford v. Louisiana, 425 U.S. 594, 96 S.Ct. 1732, 48 L.Ed.2d 198 (1976); State v. Major, 318 So.2d 19 (La.1975); State v. Williams, 310 So.2d 528 (La.1975); State v. Ranker, 263 La. 914, 269 So.2d 812 (1972).
These cases do not construe Brady v. Maryland to permit the defendant unlimited pretrial discovery. No fishing expedition is authorized by that decision and a pretrial in-camera inspection of the State's file is not required. However, the cases do understand Brady v. Maryland to hold, in effect, that the State must, upon request, furnish the defense with evidence which is material to the issues and favorable to the defense. And, if it can be shown that the State, after request, has deliberately withheld from the trial specific evidence favorable to the defense, the error would warrant reversal of the conviction. State v. Tyler, 342 So.2d 574 (La.1977). On the basis of the facts before him, the ruling of the trial judge was correct.

Assignment 2
On February 3, 1975, the day following the hearing on the motion for bill of particulars referred to in Assignment 1, the State's attorney notified defense counsel by letter, received on February 4, 1975, that in the initial stages of the investigation into this burglary, a suspect other than Linkletter had been arrested but was later released *455 when additional inquiry established his innocence.
Thereafter, on February 9, 1976, defendant filed a motion for a continuance in which it was set forth that the name of the innocent suspect referred to in the State's letter was not learned until February 5, 1976, no contact had been made with that individual and further investigation could not be carried out prior to February 11, 1976, the date set for trial.
The motion was summarily fixed for hearing on February 9, the day it was filed, for the trial judge was concerned with the numerous delays already experienced in getting the case to trial and because the jurors had been summoned. The State's attorney advised the trial judge at the hearing that defense counsel's predecessor, who had represented the defendant, was aware of the innocent suspect. He stated that the letter of February 3, 1976 informing defense counsel of the innocent suspect was written out of an abundance of caution, not because he felt that it was Brady v. Maryland, evidence material to the defense.
State v. Nix, 327 So.2d 301 (La.1976), cert. denied, 425 U.S. 954, 96 S.Ct. 1732, 48 L.Ed.2d 198 (1976), accepted as valid an argument that false leads followed out by the police certainly are not evidence tending to negate the guilt of the defendant. See also Moore v. Illinois, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972).
There was no error in the ruling of the trial judge.

Assignment 3
Prior to trial the defense filed a motion to suppress evidence in the State's possession seized by police officers of the city of Kenner and the parish of Iberia in a search of premises at 272 Auburn Street, Apartment "N", Kenner, Louisiana, on or about September 17, 1975. The grounds alleged were that the search and seizure were unconstitutional because the search was carried out incidental to a warrantless arrest of the defendant made without probable cause; and, further because the search and seizure were conducted in reliance upon the written consent of defendant obtained without the benefit of counsel to advise him.
The trial judge found probable cause to arrest and that defendant consented to the search and seizure. Defense counsel objected and assigned this ruling as error.

The Warrantless Arrest
By the express terms of Article 213(3) of the Code of Criminal Procedure, "[a] peace officer may, without a warrant, arrest a person when . . . [t]he peace officer has a reasonable cause to believe that the person to be arrested has committed an offense, although not in the presence of the officer. . . ."
Reasonable cause may be likened to reasonable belief or probable cause, terms which were defined and explained in State v. Johnson, 249 La. 950, 192 So.2d 135 (1967);
"Reasonable beliefor `probable cause', as it is termed under the federal standardto make an arrest without a warrant exists when the facts and circumstances within the arresting officer's knowledge, and of which he has reasonably trustworthy information, are sufficient in themselves to justify a man of average caution in the belief that a felony has been or is being committed. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); State v. Green, 244 La. 80, 150 So.2d 571 (1963); State v. Aias, 243 La. 945, 149 So.2d 400 (1963); State v. Calascione, 243 La. 993, 149 So.2d 417 (1963).
"Compliance with these standards is, in the first instance, a substantive determination to be made by the trial court from the facts and circumstances of the case. Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); State v. McIlvaine, 247 La. 747, 174 So.2d 515 (1965).
"And in determining compliance with these standards it is not the proof required for conviction which concerns us. Proof required to satisfy the requirement *456 of reasonable belief or probable cause is less and is what the terms imply: probabilities and practical considerations of everyday life on which reasonable men could reasonably be expected to act. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); State v. Bourg, 248 La. 844, 182 So.2d 510 (1966).
"In such cases, because only factual issues are presented by the contentions, the setting in which the arrests took place becomes a factor of prime importance; facts and circumstances known to the arresting officers from which they might draw conclusions warranted by their training and experience become the focus of our attention with due allowance for the discretion vested in the trial court."
See also State v. Dell, 258 La. 1024, 249 So.2d 118 (1971); State v. Pebworth, 251 La. 1063, 208 So.2d 530 (1968); State v. Ahrens, 250 La. 391, 196 So.2d 250 (1967), cert. denied, 389 U.S. 871, 88 S.Ct. 156, 19 L.Ed.2d 152 (1967).
This right of a peace officer to arrest upon probable cause does not depend upon his inability to obtain an arrest warrant. In the recent case of Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), the United States Supreme Court declared that ". . . it has never invalidated an arrest supported by probable cause solely because the officers failed to secure a warrant." See also United States v. Watson, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). Louisiana cases have held to the same effect. State v. Johnson, 319 So.2d 786 (La.1975); State v. Terracina, 309 So.2d 271 (La.1975); State v. Shaffer, 260 La. 605, 257 So.2d 121 (1971); State v. Johnson, 255 La. 314, 230 So.2d 825 (1970).
In determining the existence vel non of probable cause, the Court is concerned with the "facts and circumstances within the arresting officer's knowledge, and of which he has reasonably trustworthy information," State v. Johnson, 249 La. 950, 192 So.2d 135. It is not particularly significant that the officer received information that was not firsthand; what is important is the nature of the information, whether it was such that "reasonable and prudent men, not legal technicians, act." Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). Thus, observations and reports of fellow peace officers engaged in related investigations clearly provide a reliable basis for an arrest. Cf. United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).
In applying these principles to the case at hand, we find there was probable cause to arrest Linkletter for the burglary of the City Pharmacy in Jeanerette. Captain Horace Comeaux had personally examined the scene of the burglary within a short time after its occurrence. He interviewed several witnesses who had seen two suspects and a particularly described 1970 green Oldsmobile near the scene. It was obvious that the burglary had been committed by someone with considerable experience in safecracking. The suspects seen leaving the City Pharmacy just before discovery of the crime were carrying large bundles to the 1970 green Oldsmobile.
Within a few days, Captain Comeaux was notified by a fellow peace officer that a drug store in the nearby town of Kaplan had been burglarized in a similar manner approximately six weeks earlier. The Kaplan officer gave Captain Comeaux the name of a suspectVictor Linkletter which he had received from an F.B.I. agent.
Pursuing this lead, Captain Comeaux, assisted by Officer Duplantis, obtained a copy of Linkletter's driver's license from the Motor Vehicle Bureau in Baton Rouge, as well as a description of an automobile registered in Linkletter's name. From Linkletter's photograph on the driver's license Captain Comeaux learned that he fit the description of the male suspect seen by witnesses leaving the scene of the crime. In addition, the motor vehicle registered in Linkletter's name fit the description of the Oldsmobile seen parked in front of the burglarized pharmacy, the vehicle into which the suspects deposited the large bundles carried by them from the pharmacy.
*457 About the same time Captain Comeaux received the arrest and conviction record with a criminal history of Linkletter from the State police and F.B.I. This official information revealed Linkletter's past history of safecracking, a long list of arrests and several felony convictions for burglary.
With this information, Captain Comeaux proceeded to the address in Kenner, Louisiana, shown on Linkletter's driver's license. He found this to be a large apartment complex with a parking area where Linkletter's automobile was located.
Inquiry of the apartment complex manager disclosed that a young woman occasionally visited Linkletter in his apartment, the last time on September 8, the day after the burglary. The manager's description of this woman matched the description of the female suspect seen at the scene of the Jeanerette burglary.
Comeaux then proceeded to the Kenner Police Department where he enlisted their assistance. Not knowing whether, at that hour of the night, there was time to seek out a magistrate and obtain a warrant, the officers proceeded to Linkletter's apartment. They knocked on the door and Linkletter opened the door, leaving the chain latch secure. When the officers identified themselves Linkletter opened the door and let them in. After informing him of his rights, they arrested Linkletter. His automobile was towed to the police station and impounded.
The "facts and circumstances within the arresting officer's knowledge, and of which he had reasonably trustworthy information" were sufficient to provide reasonable cause for Linkletter's arrest.

The Consent to Search
After his arrest Linkletter was taken into custody and booked. The following morning he was interviewed by Detective Sergeant Congemi of the Kenner Police Department. During the interview Sergeant Congemi asked Linkletter to consent to the search of his automobile and apartment, explaining that he had the right to refuse and if he did Congemi would obtain a search warrant. However, Congemi explained that he was asking for Linkletter's consent in order to save the time and trouble involved in obtaining a search warrant.
Linkletter did not then consent to the search, asking instead for permission to contact his lawyer. He was permitted to use the telephone and tried several times to reach his attorney without success. He did however contact an unidentified person by telephone and thereafter, in order to expedite the investigation, he decided to grant consent to the searches without discussing the matter with his attorney. He thereupon signed a prepared form authorizing the police to search the apartment and his automobile after proposing certain changes. The searches were then carried out and the incriminating evidence obtained was used at the trial.
At the hearing on the motion to suppress, Linkletter contradicted portions of the testimony given by the officers but the trial judge accepted the officers' version of what occurred, finding that Linkletter gave his consent voluntarily, without coercion, force, threats, or promises. The motion to suppress was therefore denied.
In the absence of a warrant, a search conducted pursuant to a valid consent is constitutionally permissible. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The validity of such consent is dependent upon it having been voluntarily given, free of duress or coercion either express or implied. The test to determine consent, either custodial or non-custodial, is the same. Voluntariness is a question of fact to be determined from all the surrounding circumstances, and custody, like the subject's knowledge of a right to refuse, is only one factor that should be taken into account. United States v. Garcia, 496 F.2d 670 (5th Cir. 1974), cert. denied, 420 U.S. 960, 95 S.Ct. 1347, 43 L.Ed.2d 436 (1975).
Recently this Court upheld consent searches where the suspect granting the consent was in custody, both cases involvingas does this casethe consent to *458 search a vehicle which had already been impounded by law enforcement officers. State v. Rogers, 324 So.2d 403 (La.1975); State v. McMellon, 295 So.2d 782 (La.1974).
Thus, even if the arrest was without probable cause, a subsequent voluntary consent renders the search and seizure valid.
There is no merit to this assignment.

Assignment 4
Defendant filed a motion for a new trial setting forth that new and material evidence had been discovered about nine days after the trial. This new evidence, according to the motion, was to be the testimony of Kathleen McKenzie, Linkletter's accomplice and the State's principal witness at the trial. According to the motion and the attached affidavit of defense counsel, Kathleen McKenzie informed defense counsel since the trial that she would change her testimony. At the time of the trial, according to this recantation, she perjured herself by testifying that Linkletter was her accomplice in the burglary. In truth and in fact, the motion continues, her accomplice was not Linkletter but her "old man". The motion for a new trial also relied upon the issues presented in the assignments of error considered in this opinion.
On the basis of the motion the trial judge fixed a date for the hearings, a week later, and defense counsel subpoenaed Kathleen McKenzie. On the date fixed for the hearing Kathleen McKenzie did not appear. Defense counsel then moved for a continuance which was denied.
Inasmuch as Kathleen McKenzie allegedly volunteered by telephone to recant her testimony and failed to appear at the hearing, little significance is to be attached to the fact that she was not served with the subpoena. Defense counsel informed the trial judge that he had been in touch with her by telephone since the hearing was fixed. She was undoubtedly aware that her appearance was required.
Furthermore, the trial judge found that Kathleen McKenzie's recantation was not newly discovered evidence but was a position she took prior to trial, a position she rejected at the trial and reaffirmed after the trial. Without questioning defense counsel's good faith, the State suggested the possibility that the phone call received by defense counsel may not have been from Kathleen McKenzie. At that time, no one present in court had seen her since the trial.
Recantations of trial testimony should be looked upon with the utmost suspicion. La. Code Crim.Pro. art. 851; State v. Tyler, 342 So.2d 574 (La.1977). A recantation at a new trial is a confession to perjury which destroys the credibility of the witness.
On of the rules for granting a new trial on the grounds of newly discovered evidence is that if the alleged newly discovered evidence had been introduced at the trial it would probably have changed the verdict. The proposed testimony of Kathleen McKenzie, referred to in the motion, when juxtaposed to her testimony on the same subject matter at the trial, would not be likely to impress the jury at another trial or produce a different result. State v. Doyle, 138 La. 350, 70 So. 322 (1915).
Because the circumstantial evidence pointing to Linkletter as the burglar was overwhelming and Kathleen McKenzie was positively identified as the accomplice, it cannot be supposed that injustice has been done the defendant. This being the case, the motion for a new trial should be denied, no matter upon what allegations it is grounded. La.Code Crim.Pro. art. 851. There is no error in the ruling of the trial judge.
This assignment of error has no merit.

Assignment 5
Because it is not argued in brief, this assignment is considered abandoned.

Assignment 6
On February 18, 1976 the District Attorney filed a multiple offender bill charging that defendant Linkletter had previously *459 been convicted on a guilty plea on May 2, 1972 in the Thirtieth Judicial District, Vernon Parish, said conviction being for the crime of attempted simple burglary, for which defendant was sentenced to four and one-half years at hard labor. Two other previous convictions were also alleged. These were subsequently deleted because Linkletter received pardon for those crimes.
At the arraignment on this multiple offender bill the defendant chose to remain silent. The trial judge construed his silence as a denial of the allegations in the multiple bill, and the matter was heard on March 5.
At the hearing the State produced a certified copy of the minutes of court from the Thirtieth Judicial District as evidence of the May 2, 1972 guilty plea to attempted burglary.
Lieutenant Massey of the Leesville Police Department testified for the State, identifying Linkletter as the identical person convicted on May 2, 1972 in the Thirtieth Judicial District.
A certified copy of the records of the State Penitentiary at Angola pertaining to Linkletter was then introduced by the State. These documents, containing Linkletter's fingerprints and photograph, show his sentence to be four and one-half years. An expert testified that the fingerprints on the penitentiary records matched those of the defendant in this case. The State then rested.
Thereupon Linkletter took the stand and testified that on the day fixed for his trial in the Thirtieth Judicial District Court in Vernon Parish his court-appointed attorney did not make an appearance. Although he moved for a continuance, it was denied, and he was ordered to proceed without the benefit of counsel. Selection of the jury began and after some time Linkletter requested and was granted permission to contact John W. King, an attorney in Winnfield who had represented him in St. Landry Parish on other felony charges. See State v. Linkletter, 286 So.2d 321 (La.1973); State v. Linkletter, 286 So.2d 330 (La.1973).
Selection of the jury continued the next day when King arrived. King arranged a plea bargain, and Linkletter entered a guilty plea to attempted simple burglary, which he now says was coerced. The conviction relied upon in this habitual offender trial is therefore, according to the defense, invalid and cannot serve to support an enhanced penalty.
Linkletter also contended at the trial that the habitual offender statute, La.Rev.Stat. 15:529.1, was unconstitutional because of its discriminatory and unequal application to recidivist offenders. Some habitual offenders are charged under the law and some are not, he asserted. In addition, Linkletter argued that a charge under the Habitual Offender Law subjects the accused to double jeopardy, and is cruel and unusual punishment.
Finding the evidence supported the charge under the multiple offender bill, the trial judge rejected the collateral attack on the May 2, 1972 conviction in the Thirtieth Judicial District. After waiving the delay for sentencing, Linkletter was sentenced on March 5, 1976 to imprisonment at hard labor for eighteen years. This appeal followed.
The prima facie uncontested evidence of his prior conviction was sufficient to support the judgment of the trial court on the trial of the habitual offender charge. At the time of sentencing the trial judge informed Linkletter that his recourse to establish the invalidity of the May 2, 1972 conviction in the Thirtieth Judicial District Court was by application for a writ of habeas corpus in that court. Accordingly, on May 14, 1976 Linkletter applied to the Thirtieth Judicial District Court for habeas corpus. At a hearing on this application on September 29, 1976 the State objected to the court's venue, and the court found proper venue to be in the Sixteenth Judicial District. The case was therefore transferred to that district.
Linkletter then filed a new habeas application in Iberia Parish in the Sixteenth Judicial District on October 15, 1976. This application and the application transferred *460 from the Thirtieth Judicial District were dismissed with prejudice on October 18, 1976, no hearing having been conducted.
Linkletter then applied in proper person to this Court for review of these rulings, and that matter is consolidated with this appeal.
In a well-drawn petition the substance of the application referred to is stated by Linkletter to be: At the trial in Vernon Parish on May 1 and 2, 1972 when he was convicted he did not knowingly or intelligently waive counsel at any stage of the prosecution. As a consequence his rights under the Sixth and Fourteenth Amendments to the United States Constitution and the doctrine enunciated in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) were violated. A conviction obtained in a case where the right to counsel was improperly denied, he alleges, cannot be used to enhance punishment. Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967).
Since neither of the trial courts will assume jurisdiction or venue of these issues and conduct an evidentiary hearing to determine the merit of his claim, Linkletter contends he is being denied due process of law. He asks this Court to resolve the question and decide which district court should conduct the hearing.
A habeas corpus application to this Court during the pendency of an appeal may not be granted. La.Code Crim.Pro. art. 363. Accordingly that application is denied insofar as it complains of the ruling in the Sixteenth Judicial District Court. Linkletter's application to review the ruling in the Thirtieth Judicial District where venue lies to determine the validity of the May 2, 1972 conviction has been granted, and a hearing on that application is ordered. If successful there, a habeas corpus application to the Sixteenth Judicial District would then be in order to determine the validity of the enhanced penalty there.
The claim that the Habitual Offender Law is unconstitutional has been met in several decisions of this Court.
There is no showing in this record to warrant a finding that the Habitual Offender Law is applied unequally or in such a discriminatory manner, without regard to the merit of each case. No basis exists, therefore, for a finding that the Constitution is offended. State v. Vale, 252 La. 1056, 215 So.2d 811 (1968), rev'd on other grounds, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970); State v. Bullock, 329 So.2d 733 (La.1976).
An enhanced penalty is not cruel and unusual punishment under repeated decisions of this Court. State v. Williams, 326 So.2d 815 (La.1976), and authorities cited there. The same is true of the claim that the law subjects a convicted offender to double jeopardy. State v. Boatner, 304 So.2d 661 (La.1974).
In our view the defense misreads the Habitual Offender Law when its brief asserts that the present conviction is not within the statutory five years since expiration of the maximum sentence resulting from the 1972 conviction, the period within which a subsequent offense must occur to permit the filing of an habitual offender charge. Defendant was convicted on May 2, 1972 to serve four and one-half years at hard labor. He was discharged from that incarceration on June 10, 1974. Obviously, then, five years had not expired since the expiration of the maximum sentence or Linkletter's period of servitude and the September 7, 1975 burglary which formed the basis of the multiple offender charge. Therefore, the Habitual Offender Law is properly invoked here. La.Rev.Stat. 15:529.1 C.
For the reasons assigned, the conviction and sentence are affirmed.